## No. 14,004.

ESTATE OF STOIBER.
DOMINGUEZ *v.* BOOTH, EXECUTOR.
(72 P. [2d] 276)

Decided September 13, 1937. Rehearing denied October 11, 1937.

Mr. HENRY H. CLARK, Mr. CHARLES B. BARKER, for plaintiff in error.

Messrs. ADAMS & GAST, Messrs. DINES, DINES & HOLME, Mr. HAROLD D. ROBERTS, Mr. SAM PARLAPIANO, Mr. J. CHURCHILL OWEN, for defendant in error.

*In Department.*

MR. JUSTICE YOUNG delivered the opinion of the court.

THE will of Lena Allen Stoiber, deceased, was offered for probate in the county court of the City and County of Denver. Magdalena Catherine Dominguez, who was not mentioned in the will, filed a caveat. Proponent demurred. To reverse the judgment sustaining the demurrer and admitting the will to probate a writ of error is prosecuted in this court. Reference will herein be made to plaintiff in error, caveatrix in the county court, as Mrs. Dominguez, or contestant, and to defendant in error as proponent.

The facts before us on this review are those contained in the caveat, admitted by the demurrer, and are set forth in the abstract of record as follows:

"1. Caveatrix is the natural daughter of the late Wilhelm Hoffman and the late Louisa Hoffman of Cape Girardeau, Missouri.

"2. That on or about October 10, 1891, when caveatrix was about 12 years of age and living with her said widowed mother at Cape Girardeau, the decedent, Mrs. Stoiber, the wife of Edward G. Stoiber, entered first into a verbal agreement and understanding with Mrs. Hoffman, the mother of caveatrix, that she (Mrs. Stoiber) would adopt the caveatrix as her daughter and would assume the future care, custody, control, maintenance and education of caveatrix and leave her, at her death, 'a daughter's share of her estate,' and that in consideration of such agreement Mrs. Hoffman should surrender all

of her parental rights with respect to caveatrix, including her future, care, custody, control, companionship, maintenance and education.

"3. That pursuant to said agreement and understanding, and to evidence the same, Mrs. Stoiber executed in the presence of witnesses and delivered to Mrs. Hoffman a written declaration worded as follows:

" 'Cape Girardeau, Mo., October 10th, 1891, Saturday, A. M.:

" 'Lena Allen Stoiber took for adoption Magdalena Catherine Hoffman to enjoy the Stoiber home as her own for life and be entitled to a daughter's share at my death.
 Lena Allen Stoiber.'

" 'Witnesses: Dr. A. Berg, Mary Berg, Sally Frederick, John Frederick."

"4. That Mrs. Hoffman thereupon surrendered caveatrix to the decedent for the remainder of her (the mother's) life.

"5. That thereupon decedent took caveatrix from her mother's home and assumed her care, custody, control, maintenance and education, and until the marriage of caveatrix to the late Esteban Dominguez in 1903, performed the assumed obligations and enjoyed and had the benefit of the society and companionship of caveatrix, regarded and treated her as her own daughter and so introduced her to her friends and relatives; that from the time of her adoption until her marriage caveatrix, with decedent's knowledge and consent, was known as Magdalena Catherine (or 'Chubby') Stoiber.

"6. That Edward G. Stoiber, decedent's husband, had full knowledge of all the foregoing matters and the same were done and performed with his consent and approval, and that he also regarded and treated caveatrix as his own daughter.

"7. That from October 10, 1891, until her marriage in 1903, caveatrix. fully performed all the obligations resting upon her under said agreement and rendered to decedent and her husband the respect and obedience due

from a child to its parents; complied with their wishes and directions as to her education; afforded decedent and her husband the benefit and satisfaction of her companionship and society in so far as decedent's and her husband's living and traveling arrangements and habits permitted; and generally conducted herself toward decedent and her husband as a dutiful child, and as if she had been born to, or legally adopted by, them.

"8. That decedent violated said agreement in that she failed and neglected to take and perfect formal proceedings for the legal adoption of caveatrix, and further violated the same by executing and attempting to give testamentary effect to the document above referred to as her last will and testament in that she did not leave caveatrix 'a daughter's share' nor any share of her estate, and wherein and whereby, though a widow and without surviving children, she attempted to leave her entire estate to other persons than the caveatrix.

"III. Specific Objections to Probate of Will (as set forth in caveat):

"1. That decedent did not execute the document freely and voluntarily, but was moved thereto by undue influences and persuasions over her by certain persons (at present unknown to caveatrix) and who were either adverse to, or ignorant of, the rights of caveatrix as such adopted daughter.

"2. The contents of said will are illegal and prejudicial to the rights of caveatrix in that she is, and has been ever since October 10, 1891, the adopted daughter of decedent, and in that decedent was from said date bound by the contract above referred to not to disinherit caveatrix and in that decedent wholly disregarded the rights of caveatrix, and in that at the time of making said will, and at the time of decedent's death, decedent was bound by said contract either by her will to leave all of her estate to caveatrix, or during her lifetime to legally adopt caveatrix so that she might succeed to decedent's estate as such adopted daughter under the laws of descent and

distribution, all of which rights of caveatrix it is incumbent upon this court (the county court), upon proof of the facts alleged, to recognize and specifically to enforce.

"3. Prayer of Caveat. Caveatrix prayed for relief as follows: That the hearing on the probate of the will be postponed until after the issues raised by the caveat have been heard and determined; that upon hearing and trial of said issues, a decree be entered holding (1) that decedent's will in its entirety is null and void and ordering the estate to be administered as in cases of intestacy; and (2) that caveatrix is the sole surviving heir at law of decedent and as such entitled to all of decedent's estate."

The demurrer was on the following grounds:

"(1) That 'Caveat and Objections' do not state facts sufficient to show 'invalidity or illegality' and (2) that said caveatrix has no legal capacity to sue or to contest said will or object to the legality of its contents 'since it appears on the face of the caveat that she was not legally adopted by the decedent and is not an heir, and that there is in said caveat no allegation that any other will exists or was ever executed in which the caveatrix is or was named as a devisee or legatee.'"

When an issue arises as to the caveator having sufficient interest to maintain a contest it is to be tried as provided by section 5212, C. L. 1921, which is as follows: "In any will contest instituted after the passage of this act in which an issue is made by the proponent of the will, which issue raises the question of heirship or interest of the caveator or the right of the caveator to maintain the will contest upon any ground, the court shall, upon motion of the proponent, order such issue severed and shall try and determine such issue without delay before proceeding to try and determine the remaining issues. Such issue shall be tried and determined in the manner now provided for the hearing and determination of heirship in an estate in process of settlement in the county court; and, upon such trial, if such

issue shall be determined adversely to the caveator, then the will contest shall be forthwith dismissed as to such caveator." The foregoing statute was a separate act of the General Assembly entitled "An Act in Relation to the Practice in Will Contests." S. L. '17, p. 550.

We are cognizant of the purpose of will contests which is well stated in *Ford v. Donahue*, 95 Colo. 250, 35 P. (2d) 850, in an approved quotation from 28 R. C. L., p. 393, §401, as follows: " 'The purpose of a proceeding to contest a will is to divest the legatees and devisees of rights in the estate of the testator, and vest the property in his heirs at law, or in the beneficiaries named in another will.' " Unless the contestant will take or may take by an adjudication that the will in question is invalid he has not sufficient interest to give him legal standing to contest its validity.

Under the foregoing statement of the rule the question as to the capacity of Mrs. Dominguez to maintain her contest may be stated simply: In the absence of a will would Mrs. Dominguez be entitled to an interest in the estate of deceased as an heir at law?

Counsel for proponent concede in their brief:

"First, that a valid contract of adoption can be made, that such an agreement may be oral, and that an action for its breach will lie." * * *

"Second, that a clear and unambiguous agreement by a decedent to leave a child any permissible but definite part of an estate is a contract of inheritance and will be specifically enforced. * * *

"Third, that a contract not to disinherit an adopted child and a provision in a decree of adoption forbidding its disinheritance are valid and enforceable and in either such case a testament will not be permitted to stand if its probate would operate completely to disinherit the child. *Dillingham v. Schmidt*, 85 Colo. 28; *Neville v. Bracher*, 94 Colo. 551.

"Fourth, that an heir has capacity to contest a will, *Wilson v. Van Zant*, 85 Colo. 276; that 'A will declaring

that one named is the adopted son of the testator is competent evidence of such adoption, in conformity with the law of domicile of the parties, though no record is produced,' *Dawley v. Dawley's Estate,* 60 Colo. 73; and that where a decedent could not have questioned his note and deed of trust in the hands of a bona fide holder, his heirs and legatees also cannot question it. *Klein v. Munz,* 87 Colo. 223.''

These matters conceded, counsel for proponent contend, are not determinative of the issues presented which they say are:

''1. Has caveatrix the status or relationship essential to presentation of her claim by caveat—in other words, has she what the code styles 'capacity to sue'? As a corollary to this question, may her lack of such capacity be raised by a special demurrer, or must it be presented by an answer to the caveat?

''2. Does the caveat present facts sufficient to justify refusal of probate of this will?''

 We have no doubt that the question of incapacity to maintain the contest may be raised by special demurrer. Such is the express holding of *Ford v. Donahue, supra.* That it may be so raised necessarily implies jurisdiction in the court to determine whether capacity to contest exists. That it had such jurisdiction is also specifically recognized by section 5212, C. L. 1921, supra, which provides the manner in which said issue shall be determined. Counsel for proponents say that the right to contest depends on status. If so, then the county court has jurisdiction to determine the contestor's status. There is no suggestion in section 5212, C. L. 1921, supra, that the court, on such a contest, may fix the status of the contestor if it depends on a determination of legal propositions and may not do so if it depends on equitable considerations, and we know of no reason why we should so limit the jurisdiction of the county court in a matter of probate. ''County courts shall be courts of record and shall have original jurisdiction in all matters of probate,

settlement of estates of deceased persons, appointments of guardians, conservators and administrators, and settlement of their accounts * * *." Art. VI, §23, Colo. Const. If the status of heirship or non-heirship, whether dependent on matters of legal or equitable cognizance, becomes material in the probate of a will or in any proceedings incident thereto, it is a "matter of probate" within the term as used in the Constitution.

 The county court having the right to determine the question of the existence or nonexistence of a status of heirship, it remains to be determined whether the allegations of fact in the caveat are sufficient in law or equity to sustain a finding and judgment that Mrs. Dominguez is an heir of deceased, should such a finding and judgment be entered.

The written evidence of the contract leaves no room for doubt that Mrs. Hoffman surrendered the possession of her child, now Mrs. Dominguez, for the purpose of having her adopted by the deceased, Mrs. Stoiber, and that Mrs. Stoiber agreed to adopt her. The admitted allegations leave no doubt that the contract was fully performed by Mrs. Hoffman and by Mrs. Dominguez.

*Horton v. Troll*, 183 Mo. App. 677, 167 S. W. 1081, was a case in which the facts are similar to those in the case at bar. Four children were involved. They were surrendered by their father, a widower, under an agreement with a Mrs. Dunham that she and her husband would adopt them. The husband ratified the contract. The children were treated and recognized from the time of their surrender to the Dunhams as their adopted children and the latter conducted themselves toward their foster parents as dutiful and obedient children. No deed of adoption—that apparently being the formal method of effecting an adoption in Missouri—was ever executed or filed by the Dunhams to carry out the contract according to its terms. Dunham died leaving his property to his widow and on her death the children brought an action in equity against the administrator of Mrs. Dunham's

estate praying that they be adjudged her legal heirs and entitled to inherit her estate. The material part of the decree entered by the trial court was as follows: "The court doth therefore order, adjudge and decree that the said contract between Thomas Hudson and Elizabeth C. and Lavinus Dunham became and is in every respect an executed deed of adoption and, as such, established the status of plaintiffs as lawful children and legal heirs of said Elizabeth C. and Lavinus Dunham and entitles them to the full rights of such children and heirs in the estate of said Elizabeth C. Dunham; that the said Elizabeth C. Dunham, having died intestate and without issue of her body, the plaintiffs are her sole heirs and are entitled, in equal shares, to the whole of her estate, remaining for distribution upon final settlement thereof, after the payment of all lawful claims properly allowed against said estate and the costs of administration; that the costs of this proceeding be paid by the defendants, except the defendant Harry Troll, administrator of the estate of Elizabeth C. Dunham, deceased" The judgment of the trial court was affirmed. The case was decided in 1914. In 1919 an opinion was rendered in the case of *Rauch v. Metz* (Mo.), 212 S. W. 357. The action was brought in the trial court by the executors of the will of Henry F. Peiper against Herman C. Metz and others including Mary Ensor, for a construction of the will. Elizabeth Metz was a sister of Henry F. Pieper. His will contained a clause: "To Elizabeth Metz, or in the event of her death her heirs shall receive one-thirteenth." She predeceased him leaving a son Herman C. Metz, and Mary Ensor who claimed as an adopted child and heir of Elizabeth. The court in the opinion said: "Mrs. Ensor claims the status of both heir and descendant by virtue of an alleged adoption as the child of Mrs. Metz. We do not understand that her counsel contend that there was any adoption by deed executed and recorded under the provisions of the act of 1857 concerning the adoption of children, which is still continued in our statutes. R. S.

1909, §§1671-1673. There is, however, no principle of law more firmly settled in this state than that that relation may be created by the acts and undertakings of the parties fully executed on behalf of the child. * * *

"This suit is not brought upon a contract. It simply involves the recognition of a status which, if it exists, is an accomplished fact. It bears no resemblance to those cases in which it is sought to enforce the specific performance of an agreement to make a will or to otherwise compensate another at the death of the promisor."

In *Craddock v. Jackson* (Mo.), 223 S. W. 924, the court said: "A court of equity has jurisdiction to enforce a parol contract of adoption and to make and establish by its decree the status of an adopted child as an heir of its adoptive parents. * * *"

In *Barney v. Hutchinson,* 25 N. M. 82, 177 Pac. 890, the court said: "Notwithstanding that the contract to adopt the father of the plaintiff in this case made no mention of property rights of the adopted son, we are satisfied that equity and justice demand the specific performance of the contract, to the end that Frank C. Barney be adjudged the adopted son of Annie C. Hutchinson, and that the right of succession of the appellant, the daughter of Frank C. Barney, be recognized in accordance with the statutes in such cases made and provided. In so holding we do no violence to the statutes of inheritance. We simply hold that equity will consider that Frank C. Barney was in all respects the legally adopted son of the Barneys, and that the surviving spouse of Annie C. Hutchinson, as well as her collateral heirs, cannot be heard to dispute that which the ancestor would be estopped from asserting. The laws of inheritance consequently are not impaired, but follow their natural course. They operate upon the relation created by the contract the same as though the legal adoption had taken place."

Counsel for proponent concede that *Ezell v. Mobley,* 160 Ga. 872, 129 S. E. 532, is authority for sustaining

the right of Mrs. Dominguez to contest, but say that it is contrary to the overwhelming weight of authority. The dissenting opinion of Justice Gilbert points out the anomaly of permitting one whose rights are equitable only to file a caveat before such rights are established. He says: "If the issue as to such interest may be tried after the trial on the probate of a will, cases may arise where a will may be set aside and nullified by a person afterwards adjudicated not to have any interest in the estate." The cogency of such reasoning must be recognized in a case where the interest of the caveator cannot be placed in issue and tried in the probate court. But under a statute such as section 5212, C. L. 1921, supra, where provision is made for, indeed requires, an antecedent determination of the question of the contestor's interest before a hearing is had on the caveat, no anomaly is presented, no rights are jeopardized and a direct and logical method of accomplishing what courts of equity after probate of a will have heretofore accomplished indirectly is provided. By the statute those interested adversely to the caveator are not deprived of their day in court, but are required merely to litigate the same matter that proponents concede may be litigated in a court of general equity jurisdiction in another forum; namely, the court having jurisdiction of the probate of the will.

If on a trial of the issue of the capacity of Mrs. Dominguez to contest the will it shall be determined that there was an equitable adoption, thus giving her in equity the status of an heir and the right to contest the will, and in such contest she shall be successful in showing that the will is the result of undue influence or is otherwise invalid, this will in practical effect dispose of the question of whether there was a contract of inheritance. Any rights of Mrs. Dominguez existing by virtue of contract, in the event she shall be unsuccessful in establishing a status of heirship, and the effect, if any, of such contract rights as she may have on the validity or operation of the will, in the event she shall be successful in

establishing a status of heirship and unsuccessful in establishing undue influence, we leave for determination until such questions shall have been adjudicated in the will contest or in some other proceeding, and our jurisdiction properly invoked to determine the validity of such judgment.

The judgment of the county court admitting the will to probate is reversed and the cause is remanded with instructions to overrule the demurrer and for further proceedings consistent with the views herein expressed.

MR. CHIEF JUSTICE BURKE and MR. JUSTICE BOUCK concur.