In re ESTATE of William .FEDINA, Deceased, et al., Appellants,

v.

Nikolay Ivanovich FEDINA et al., Respondents.

No. 56050.

Supreme Court of Missouri, Division No. 2.

March 12, 1973.

554

Richard P. Nangle, George W. Curran, St. Louis, for appellants.

Smith, Hanke & Batts, by Harold C. Hanke, St. Louis, and David R. Hensley, Clayton, for respondents.

STOCKARD, Commissioner.

█ Appellants have appealed from the judgment of the Circuit Court of the City of St. Louis by which respondents were determined to be heirs of William Fedina, deceased, and by which the court ordered a partial distribution of his estate. At the time this appeal was filed this court had appellate jurisdiction by reason of the amount in dispute, and such jurisdiction is retained for final disposition of the case. Mo.Const. Art. V, § 31.

William Fedina, a resident of the City of St. Louis (hereafter referred to as the "Deceased" or by name), died intestate and without direct descendants on December 31, 1964. Appellant Genevieve Singler Geisel, a grandniece, was appointed administratrix d. b. n. In a petition seeking such appointment she stated that she and William Fedina, a resident of the State of Cal-

ifornia and a nephew of the decedent, were the only heirs. Because of the identity of names, this nephew will be referred to as "appellant nephew."

On October 20, 1966, there was filed in the probate court on behalf of respondents an affidavit executed on August 25, 1965, by Nickolay Ivanovich Fedina, written in the Russian language with a translation to English, in which it was stated that affiant was a brother of the decedent, and that the other respondents were a brother and sisters of the decedent, all of whom lived in Russia.

Subsequently, and on October 11, 1967, respondents filed a petition, pursuant to § 473.613 RSMo 1969, for an order of partial distribution. Appellant nephew filed a motion to dismiss the petition on the grounds that respondents were "strangers to the proceedings," and it was alleged therein that "each and every affidavit heretofore filed in behalf of said petitioners" is an ex parte self-serving instrument, executed by a living person who could be called as a witness, and for that reason the affidavits are "inadmissible in evidence for the purpose of determining heirship upon which the right to a partial distribution is conditioned."

After a hearing before the probate court, judgment was entered that the appellants and also the respondents were the heirs at law of the decedent, and a partial distribution as requested was ordered. From this order an appeal was taken to the circuit court where appellants renewed their motion to dismiss the petition for partial distribution, and in addition to the reasons assigned in the probate court, they asserted that the petition did not request or pray for an adjudication of heirship; that the probate court did not have jurisdiction to order partial distribution; and that due process was not satisfied because there was a failure to give proper notice of determination of heirship.

Respondents introduced in evidence signature cards from four banks and an application for employment, each purportedly containing the signature of the decedent. Two of the cards listed decedent's place of birth as Poland.

Mrs. Catherine Quinn, a resident of Warren, Michigan, testified that she was born in Bronitsa in the Ukraine, which at one time was a part of Poland but is now in Russia, and that when there she knew a Fedina family which consisted of the parents, John and Maria Fedina, and six children. She stated that four of the children were Anna, Tassie (Tatiana), Andrey, and Nikolay, the latter having married her sister, and that John and Maria Fedina had two other sons by the name of Mike and William (Vasily), who had gone to America, but she did not know them personally. She identified a photograph taken in 1926 in Bronitsa in the home of her sister, Anna, who was married to Nikolay, in which she, her sister, and Nikolay were shown. Mrs. Quinn also testified that her brother-in-law, Nikolay Fedina, wrote to her and told her that his brother William (the deceased) was in the United States, and that he gave her William's address. Nikolay later wrote to Mrs. Quinn that William had died.

Catherine Hook, age 84, was born in Bronitsa and came to America in 1906. She testified that she knew John and Maria Fedina in Bronitsa, and that they had six children, Anna, Mike, Andrey, Tatiana, Nikolay, and Villay (Vasily?). She also stated that Mike first came to America and that William came later; that she knew both of them in the United States; and that William played the violin at her wedding. After William died she caused a letter (she could neither read nor write except her name) to be written to her daughter in Bronitsa telling of his death. On cross-examination she admitted that she previously had told Jennie Fedina (divorced wife of Mike Fedina and Grandmother of appellant Genevieve Singler Geisel) that she knew nothing about relatives in Russia, but she later said that this conversation occurred after she had learned about

the pending court proceedings, and that she did not want to go to court.

Respondents also offered in evidence an affidavit of Nikolay Ivanovich Fedina, a resident of Bronitsa, Russia, written in the Russian language with a translation into English attached thereto. In this affidavit Nikolay stated that he was the son of Ivan (John) and Maria Fedina, and the brother of Anna, Mikhail (Mike), Vasily (William), Andrey and Tatiana. He attached to the affidavit a letter which he stated he had received in 1934 from his brother William in the United States. He also attached three photographs showing William, Mike, and Mike's granddaughter, which he stated he had received by mail from William. Respondents also offered the testimony of an expert that the writing on the various exhibits which purportedly were written by the deceased had been written by the same person who had signed signature cards and the employment application.

In support of their position that respondents were "strangers to the proceedings," appellants each testified and presented the testimony of two others.

Jennie Fedina, the divorced wife of Mike Fedina, testified that she married Mike in 1910, and became acquainted with the deceased in 1912 and knew him until the time of his death. He stayed in her house at one time for a period of nine months. During the entire time she was acquainted with the deceased, there was never any conversation between her, Mike or the deceased concerning relatives in a foreign country, and the first she heard about relatives in Russia was when her son told her that someone had filed a claim against the estate claiming to be a relative. However, on cross-examination she admitted that after Mike died (1960) the deceased told her that he was going to write to his sister.

Anthony Singler, the father of appellant Genevieve Singler Geisel, testified that he married the daughter of Mike Fedina, and had met the deceased twice. During the time he was married, about three and one-half years, he never had a conversation with his wife concerning any relatives in a foreign country.

Appellant nephew, son of Mike, testified that neither his father nor the deceased, with whom he was acquainted, ever advised him of any relatives in a foreign country, and that he first learned that there were people who claimed to be heirs when he was advised that a claim had been filed. He identified a notice of the death of Mike which he said was prepared by the deceased, in which reference was made to "Dear father of William Fedina; dear brother of William Fedina; dear father-in-law and grandfather." No reference was made therein to respondents.

Genevieve Singler Geisel testified that neither Mike (her grandfather) nor the deceased ever had a conversation with her about any other brothers or sisters, and the first time she heard of any such other brothers or sisters was after a claim was filed against the estate.

Appellants assert that the trial court erred in ruling that the probate court, and the circuit court on appeal, had jurisdiction to determine the heirs of the decedent incident to the determination of a petition for partial distribution. Appellant argues that (a) neither § 473.613 nor any other statute specifically confers jurisdiction on the probate court to determine heirship; (b) on appeal from the probate court the jurisdiction of the circuit court is derivative only; and (c) jurisdiction to determine heirship was not invoked by respondent's petition for partial distribution because it failed to bring the case within the purview of any statute authorizing such determination.

Mo.Const. Art. V, § 16, provides that "There shall be a probate court in each county with jurisdiction of all matters pertaining to probate business, * * *." § 472.020 RSMo 1969, implements the constitutional provision, Henderson v. Allen, 440 S.W.2d 446 (Mo.1969), and provides that "The probate court has jurisdiction

over all matters pertaining to probate business, * * * [and, among other things] of the determination of heirship, * * *." § 473.613 RSMo 1969, provides that upon "application of any distributee after the expiration of six months from the date of letters, the court may order the executor or administrator to deliver to any distributee any specific real or personal property, or the possession thereof, to which he is entitled or may decree partial distribution if the court believes that other distributees and claimants are not prejudiced thereby."

Appellants argue that the provision in § 470.020 pertaining to the determination of heirs "is nothing more than a recital of the jurisdiction of the probate court" and "confers no specific power" to make such determination in a proceeding for partial distribution, and that a probate court has no powers not specifically conferred by statute, even though it would have jurisdiction if the legislature saw fit to confer the power. They contend that respondents should have obtained a determination of heirs in the circuit court pursuant to the Declaratory Judgment Act.

In addition to the above statutory provisions, § 472.030 provides that "The [probate] court has the same legal and equitable powers to effectuate its jurisdiction and to enforce its orders, judgments and decrees in probate matters as the circuit court has in other matters * * *." The constitutional and legislative grant of jurisdiction to the probate courts, and the broad legislative grant of "powers to effectuate its jurisdiction * * * in probate matters" clearly expresses the intention that the probate court shall have the power to make all determinations of fact necessary and essential to order a partial distribution of the assets of an estate. We find it difficult to perceive of a more essential fact than the determination of those to whom the partial distribution is to be made.

■ We conclude that the probate court had the jurisdiction and the power to determine the heirs of William Fedina in or-

der to effectuate its jurisdiction and authority to order a partial distribution pursuant to § 473.610.

Appellants also contend that the trial court erred in its determination that respondents are heirs of William Fedina, deceased, because (1) the court erred in admitting into evidence the affidavits of Nikolay Fedina, and all attachments thereto, because Nikolay Fedina was a living person who was available to be called as a witness; (2) the court erred in admitting the bank signature cards and the application for employment for the purpose of identifying the signature of William Fedina, deceased, "because the signatures appearing thereon were not properly identified or proved"; (3) the court erred in admitting letters purportedly written by William Fedina, deceased, "which were not identified by the recipient thereof, or by any other witness, and the questioned handwriting thereon was erroneously compared with signatures of the decedent that were not proved to be genuine"; (4) the court erred "in admitting the record of a decision of the Peoples Court of the U.S.S.R., dated December 23, 1965, wherein there is a determination of heirship of the decedent herein who at the time of his death in the year 1964 was a citizen of the United States"; (5) the court erred in admitting certified copies of "reconstituted vital statistic records offered to prove the heirship of respondents, because positive proof of the validity of said records was lacking"; (6) the court erred in "permitting Catherine Quinn to give hearsay testimony"; (7) the court erred in admitting "the powers of attorney filed in behalf of the respondents because there was no positive proof of the validity thereof"; and (8) "the finding of the Court [that respondents are heirs of William Fedina, deceased] is in error because it is not supported by substantial evidence."

Subparts (1), (3), (4), (5), (6) and (8) pertain in whole or part to the contention, as stated in subpart (8), that the finding of heirship was not "supported by substan-

tial evidence." That contention will be considered separately and subsequently.

We shall first consider the contention in subpart (2) that the court erred in admitting the various signature cards (because the signatures appearing thereon were not properly identified or proved.)

When the bank signature cards, Exhibits Nos. 4, 6, 7 and 18 and stockholder's account, Exhibit 17, were offered in evidence the trial court sustained objections thereto on the ground that the witnesses who identified the cards as business records did not see William Fedina sign the cards, and for that reason the cards were not admissible to prove his signature. However, the employment application, Exhibit No. 5 was signed by William Fedina in the presence of the witness who identified the exhibit, and it was admitted into evidence without objection. This was also true as to the signature card (Exhibit No. 19) from the Jefferson-Gravois Bank. Respondent's witness Beckemeier, a handwriting expert and document examiner, testified that in her professional opinion the signatures on Exhibits 5 and 19 were written by the same person, and also that the signatures on the Exhibits 4, 6, 7 and 18 were written by the same person who wrote the signatures on Exhibits 5 and 19. After the testimony of expert witness Beckemeier the four exhibits, to which an objection had previously been sustained, were again offered in evidence. The objection then made was: "I object to all of that as being irrelevant in a hearing on determination of heirship. They were qualified as being business records of those various banking institutions and I don't see how they are admissible to a hearing on heirship." It is thus apparent that appellants abandoned their contention that there was no proof that the signatures thereon were that of William Fedina. Aside from the issue of abandonment or the sufficiency of the objection, we conclude that the exhibits were properly identified and were admissible as evidence from which it could be found that the signatures thereon were those of William Fedina.

In subpart (1) appellant challenges the admission in evidence of the affidavit of Nikolay Fedina "because he was available to be called as a witness." We note that there is no challenge to the authentication or to the translation into English. Whether the affidavit could be considered as proof of the facts therein stated will subsequently be considered.

Appellant Genevieve Singler Geisel filed with the probate court a petition for the removal of the public administrator as administrator of the estate of William Fedina, and for the appointment of herself as administratrix. Whether this petition was sworn to is not revealed by the record. In that petition she stated that she and William Fedina, a nephew of the deceased, were the sole heirs. The record before us does not contain the application for letters of administration, which was filed with the above petition, but we may assume that it was verified as required by § 473.017 RSMo 1969, and that it named appellants as the sole heirs. The affidavit of Nikolay Fedina was filed subsequent thereto, and it disputed the averment in the application for letters that appellants were the sole heirs. In substance, appellants now contend that the verified application by Genevieve Singler Geisel, as to the averment that appellants were the sole heirs, was proper, but that the affidavit of Nikolay as to who were heirs was not proper because Nikolay "was a party to this action" and was "available to be called as a witness."

The two affidavits served the purpose of pleadings by which the issue as to who were the heirs was presented for determination. We need go no further than to rule that the acceptance of the affidavit of Nikolay was not improper for either of the two reasons assigned by appellants, reserving however for subsequent consideration the evidentiary value of the allegations therein.

In subpart (8) appellants challenge the sufficiency of a power of attorney executed pursuant to § 473.657 RSMo 1969, which authorizes the distribution to nonresident or foreign distributees to be made "to the distributees themselves or to persons holding powers of attorney * * *." There is no merit to this challenge. First, distribution is authorized to be made directly to the foreign distributees, and appellants do not complain about that. Second, the problems of the administrator, if any, in making proper distribution after it has been ordered and approved is not of concern to these appellants. Third, if the power of attorney is deficient, the relief would be no more than to withhold distribution until proper authority of the recipient was established, a matter to be ruled by the probate court when that issue is reached.

Appellants challenge, in subpart (3), the admission in evidence of letters purportedly written by William Fedina because they were not identified by the recipient thereof or by other witnesses, and the handwriting in the letters was erroneously compared with signatures of William Fedina that were not proved to be genuine. Appellants cite no case. They refer to § 490.640, RSMo 1969. That section authorizes the comparison of a disputed writing with any writing proved to the satisfaction of the judge to be genuine.

First, the handwriting in the letters was not erroneously compared with the handwriting on the signature cards. The signature on two of the exhibits was placed there by William Fedina in the presence of the witness who identified each card. The signatures of the other exhibits were established to have been those of William Fedina by an expert whose qualifications as such are not challenged by appellants, and the genuineness of those signatures was proved "to the satisfaction of the judge." § 490.640. In this circumstance it was not necessary that they be identified "by the recipient thereof." These letters were properly admitted into evidence. We consider subsequently their value as evidence of the facts therein stated.

In subpart (6) appellants claim error in the admission of hearsay testimony on the part of witness Quinn, but there is no reference to what testimony is claimed to constitute hearsay. In the argument under this subpart there is no reference to hearsay. The only challenges there made are that her testimony was false in some respects, that it was inconsistent and evasive, and that parts of it were wrong. The issue of hearsay is not before us.

We turn now to the issue of whether the determination of the court that respondents were heirs of William Fedina is supported by "substantial evidence." Appellants cite only 32A C.J.S. Evidence § 1035, which states that when "weaker and less satisfactory evidence is offered when stronger and more satisfactory evidence is within the power of the party, the evidence offered should be viewed with distrust." In view of the place of residence of appellants, we are at a loss to know what "stronger and more satisfactory evidence" was within their power, and we have no suggestions from appellants.

This was a court tried case, and the scope of review on appeal is controlled by § 510.310 RSMo 1969. We shall consider independently the evidence and arrive at our own conclusion concerning the facts. As a general rule, where the determination depends upon conflicting oral testimony an appellate court will defer to the findings of the trial court. In re Petersen's Estate, 295 S.W.2d 144 (Mo.1956). However, in reviewing the evidence the appellate court may disregard any evidence improperly admitted and considered by the trial court. In that event the issue of deference does not arise.

We do not rule, nor even imply, that certain evidence was not properly considered as proof of who constituted the heirs of William Fedina, but in our discre-

tion we shall review the evidence and reach our conclusion without taking into consideration the allegations in the affidavit of Nikolay Fedina, referred to in subpart (1); the decision of the Peoples Court of U.S.S.R., referred to in subpart (4); and the so-called "reconstituted vital statistic records referred to in subpart (5). All of this evidence, if considered, would be favorable to respondents. We shall consider, along with the other evidence, the contents of the letters, clearly established to have been written by William Fedina, to relatives in Russia in which he stated the relationship of some or all of the appellants to him. For our authority to do so, see 29 Am.Jur.2d, Evidence § 508 et seq., and particularly § 512 which provides as follows: "No particular form of statement is required to render a declaration as to pedigree admissible as evidence. It may be oral or written, *such as a letter,* a recital in a deed, or statements in privately published genealogies regarded as authoritative" (Italics added). See also, Wise v. Wynn, 59 Miss. 588, and Hemonas v. Orphan, 191 S.W.2d 352 (Mo.App.1945).

■ The testimony of Catherine Hook is convincing. She was personally acquainted with all the appellants, and she was personally acquainted with William Fedina. She maintained her acquaintance with William in the United States, and kept in contact with members of the Fedina family in Bronitsa. She was positive and certain in her testimony that Nikolay was a brother and that the other respondents were a brother and sisters of William Fedina. This testimony of Mrs. Hook was strongly corroborated by Catherine Quinn, whose sister was married to Nikolay Fedina. The letters from William Fedina, in addition to being strongly corroborative of the testimony of Mrs. Hook and Mrs. Quinn, constituted strong and persuasive evidence that respondents had the claimed relationship to William Fedina. In one letter William referred to Nikolay as his brother and inquired about his sisters Anna and Tatiana. In another he refers to Brother Andy and Sister Annie, and in a letter written only a few years before his death to Nikolay he referred to Mike as "our brother." Appellant's evidence was only to the effect that they had not heard of the existence of appellants.

When we review the evidence as above stated, we reach our independent conclusion that the trial court correctly held that respondents were heirs of William Fedina, and that it did not err in affirming the order of the probate court for partial distribution.

The judgment is affirmed.

HOUSER, C., concurs.

PER CURIAM:

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

MORGAN, P. J., HENLEY and DONNELLY, JJ., and EDWARDS, Special Judge, concur.