In the Matter of the ESTATE of Ralph TAPP, Deceased.

Lewis W. TAPP et al., Appellants,

v.

John Wesley TAPP, a/k/a John Wesley Oliver, Respondent.

No. 10179.

Missouri Court of Appeals, Springfield District.

June 12, 1978.

Motion for Rehearing or Transfer Denied July 3, 1978.

Application to Transfer Denied Sept. 12, 1978.

William B. Waters, Thomas E. Allen, Hale, Kincaid, Waters & Allen, Liberty, for appellants.

Robert Ernest Gould, Sheridan, Sanders, Mason & Simpson, Kansas City, for respondent.

Before STONE, P. J., and HOGAN and FLANIGAN, JJ.

FLANIGAN, Judge.

On January 10, 1970, Ralph Tapp, 91, died intestate in St. Clair County, Missouri, leaving an estate appraised at $89,306.64. Letters of administration were issued by the probate court of that county. During the pendency of the administration John Wesley Tapp, a/k/a John Wesley Oliver, respondent in this court, filed in the probate court a "Petition for Establishment of Right to Inheritance."[1] In that petition John Wesley Tapp claimed that he was the sole natural child of the decedent. The petition was opposed by three nieces and two nephews of the decedent. They are the appellants here. The administrator is a formal but neutral party. The outcome of the appeal will determine whether the estate will be distributed to respondent or to appellants, decedent having left no surviving spouse.

To avoid confusion arising from similarity of names, respondent will be referred to as "Wesley." Both the probate court and the trial court found in favor of Wesley. They also found that Wesley is the sole natural child of the decedent and appellants concede the validity of that finding.

It is the position of appellants that Wesley is precluded from inheriting from the decedent because in 1920, by the decree in Case No. A973 in the Juvenile Division of the Circuit Court of Jackson County, Missouri, Wesley became the adopted son of John W. Oliver and his wife Harriet Oliver. Wesley counters that assertion by claiming that the adoption decree is void for lack of consent of Wesley's natural parents, Ralph Tapp (decedent) and Nellie Tapp, to the adoption. Appellants claim that the adoption decree is not deficient in the respect claimed by Wesley. Additionally, appellants argue that whether or not the adoption decree is valid, Wesley has no standing to challenge its validity for two independent reasons: (a) the issue of the consent or lack of consent of the natural parents may be raised only by them and (b) Wesley has estopped himself from denying the validity of the adoption decree by reason of his reliance thereon in a will contest which he filed in Illinois in 1956, contesting the will of John W. Oliver. This court finds merit in reason (b) and it is unnecessary to rule on the other contentions.

■ If the 1920 adoption decree was valid, it had the effect of barring Wesley from inheriting the estate of his natural parent. *Wailes v. Curators of Central College*, 363 Mo. 932, 254 S.W.2d 645, 649[6] (Mo. banc 1953). The same result is reached in the instant action if, as this court holds, Wesley has estopped himself, by conduct to be described hereafter, to deny the validity of the adoption decree.

In the circuit court both sides invoked Rule 73.01(b)[2] by requesting findings of

---

1. For a case discussing and upholding the jurisdiction of the probate court to determine heirship in this type of proceeding, see *Estate of Fedina v. Fedina*, 491 S.W.2d 552, 557[2] (Mo. 1973).

2. Unless otherwise indicated, all references to rules are to Missouri Rules of Court, V.A.M.R., and all references to statutes are to RSMo 1969, V.A.M.S.

fact. The trial court, in its findings, said "there was no conflict in the evidence upon any material issue in the case." Most of the evidence to be recounted was introduced by Wesley himself or on his behalf. In its memorandum accompanying its judgment, the trial court attached no significance to the Illinois proceeding and made only passing reference to it.

On March 28, 1917, Ralph Tapp married Nellie Dykes. One witness testified that Nellie was a relative, perhaps a second cousin, of Ralph. Both Nellie and Ralph were born in 1878. As a young girl Nellie lived in the home of Ralph and his parents, because Nellie's mother had died.

In the latter part of March 1917, the Tapp family doctor informed Dr. J. A. Robertson that "he had a patient expecting a child to be born too soon after their marriage and that this presented quite an embarrassment to the family as there were some girls in the home and he wanted to know if Dr. Robertson would take this woman into the hospital, to be there for about three months, and until after the baby was born." Nellie was admitted to Wesley Hospital in Kansas City, Missouri, and on June 19, 1917, she gave birth to Wesley. Dr. Robertson was attending physician and the nurse in charge of the delivery room was Bertha Loomis, R.N.

On July 3, 1917, a document entitled "deed of adoption" was executed and acknowledged by Ralph Tapp and his wife Nellie Dykes Tapp. That document was also executed and acknowledged by John W. Oliver and Harriet Oliver, his wife, but that was done on September 12, 1918, before a different notary public. By the terms of the deed of adoption the Olivers adopted Wesley and the Tapps consented to the adoption and released their parental rights. The deed of adoption was recorded in Jackson County on September 17, 1918.

In July 1917 Nellie was released from the hospital and returned with Ralph to the home of his parents. Before leaving the hospital Ralph told Dr. Robertson to "find a home for the brat." Baby Wesley remained in the hospital "until the Olivers took him" in 1918, and he made his home with the Olivers until 1938. As heretofore noted, in 1920 the adoption decree was entered in Case No. A973 in Jackson County, Missouri, by the terms of which the Olivers adopted Wesley. Until 1926 the Oliver home was in Kansas City, Missouri. Later the Olivers and Wesley moved to Philadelphia for a few years and then they moved to Illinois. Wesley continued to make his home with the Olivers in Illinois until 1938. Nellie Tapp died in 1924.

As a child in the Oliver home in 1925 Wesley "opened some papers and started to read them." He saw on the papers, "Regarding adoption, [Wesley]." Mrs. Oliver snatched the papers from him but Wesley "continued to think about them." As a teenager he started questioning Mrs. Oliver, "trying to find out from her who my natural parents were because I believed that they [the Olivers] were not and they refused for a good many years to discuss it with me." In 1935 or 1936 the Olivers "finally told me the whole story." Mrs. Oliver was "quite candid" and she and Wesley "had lots of discussions about it, my origin, and her knowledge of the Tapp family." After his discussions with Mrs. Oliver, Wesley "finally knew all of the facts."

On *direct* examination Wesley testified that Mrs. Oliver had discussed with him "the procedures that were involved in going through this second[3] adoption procedure . . . we had a lot of candid discussions about it and it was a continuing thing that came up from time to time. We would discuss it. *She told me that they had to go through the second adoption because they found out that the original deed was not valid and at that time she said that they*

---

3. It is clear from the record that Wesley, in using the term "second adoption procedure," was referring to the 1920 proceedings in Case No. A973. It was the "second adoption procedure" in the sense that the recordation of the deed of adoption in 1918 was the "first."

tried to contact the Tapps again to get a consent for the second adoption, but that at that particular time they received no reply from the Tapps. *The letters were unanswered.*" Mrs. Oliver told Wesley that her attorney, Mr. Woodbury (a nephew of Dr. Robertson), had tried unsuccessfully to contact the Tapps.

On cross examination Wesley admitted that during the 1930's he learned that "there was some question about the legality" of the adoption. Asked to pinpoint the time when he first "questioned the legality of the adoption," Wesley responded that by 1935 he knew "that there was an alleged technical deficiency or technical problem."

Wesley left the Oliver home about 1938 "because I had to earn a living." After he "finally knew all the facts" he did not make any immediate attempt to locate his natural parents or contact the Tapp family because of "finances more than anything else." In January 1940 Wesley and John Oliver came to Missouri and went to the courthouse in Liberty. One of the clerks there showed Wesley the marriage certificate of Ralph and Nellie Tapp. Wesley made an unsuccessful attempt to locate Ralph Tapp at that time.

In July 1942 Wesley went again to Kansas City, this time to obtain a birth certificate which he needed in connection with a job application. With the help of Dr. Robertson, with whom Wesley spent several days, and attorney Hal Thurston, together with an affidavit supplied by Nurse Loomis, Wesley obtained a "substituted birth certificate" showing that he was born to the Olivers on June 19, 1917. Attorney Thurston had been Wesley's guardian ad litem in the 1920 adoption proceedings. Thurston and Wesley inspected "records" at the Jackson County Courthouse and "got the information that [Thurston] needed." He also learned that the original birth certificate was made out to Nellie and Ralph Tapp but he did not see that certificate.

Wesley testified that in 1942, while obtaining the birth certificate, "I was confronted with the fact that the Tapps were my parents and as far as I was concerned they must have been my legal parents if I had never been adopted—I felt that I was the son of Ralph and Nellie Tapp and in 1942 I knew all the facts. In 1942 when Dr. Robertson told me all of the facts and I was able to think about it myself and I talked to Mr. Hal Thurston and at that time *I was thoroughly convinced in my own mind that Ralph and Nellie Tapp were my legal parents.*" It was then that Wesley concluded that he was not "legally adopted by John and Harriet Oliver." [4] This conclusion was based in part upon information given him by Dr. Robertson and attorney Thurston.

Wesley was living in California when John Oliver died in 1956 in Illinois. Harriet Oliver had predeceased her husband. Wesley returned to Illinois for the funeral. The next day Wesley was present during the reading of the will of John Oliver. The will left the entire estate to the testator's brother Jackson Oliver.

Later in 1956 Wesley hired attorney James Wolf of Los Angeles "to find out if I had any legal standing, if I had any benefits accruing to me." Wesley explained to Wolf "that I was adopted. *I explained that there was a question about the adoption, as to the legality of it.*" An Illinois lawyer, Ralph Suddes, deceased at the time of the trial, was hired as local counsel.

On October 25, 1956, Wesley, through his two attorneys, filed a complaint to set aside the will of John Oliver on the grounds of undue influence and lack of testamentary capacity. The complaint alleged that Oliver died "leaving surviving him one son, the complainant herein." The complaint made many references to Wesley as Oliver's "son and only heir."

On January 25, 1957, Wesley, through his attorneys, filed a motion to dismiss the will contest with prejudice, the motion reciting

4. In the instant proceeding Wesley admitted the truth of the following request for admission: "that prior to the death of John Oliver in January 1956, you [Wesley] had knowledge of some alleged deficiency or irregularity in the adoption proceeding pertaining to you in the Juvenile Court of Jackson County, Missouri, in April 1920."

that the cause "had been settled." On the same day the order of dismissal was entered.

As a result of the settlement of the will contest, Wesley received $1,500 from the Oliver estate.[5] Records of the Illinois probate court in which the Oliver estate was pending, and in which Wesley had entered his appearance, contained an "order finding heirship." The latter order recited that John Oliver died "leaving surviving him: [Wesley] adopted son."

■ One who has accepted and retained the benefits of a judgment (or decree) is estopped to deny, on any ground, the validity thereof, or any part thereof, or any of its burdensome consequences, even where the invalidity arises from want of jurisdiction over the person or over the subject matter. *Tremayne v. City of St. Louis*, 320 Mo. 120, 6 S.W.2d 935, 946 (Mo. banc 1928); *Sage v. Finney*, 156 Mo.App. 30, 135 S.W. 996, 1000[9] (1911); *Wilson v. Union Electric Light & Power Co.*, 59 F.2d 580 (8th Cir. 1932); *In Re Reynolds' Will*, 85 N.W.2d 553, 562[9, 10] (N.D.1957); *Mason v. Urban Renewal of North Little Rock*, 245 Ark. 837, 434 S.W.2d 614, 615[1, 2] (1968); *Burgess v. Nail*, 103 F.2d 37, 44 (10th Cir. 1939); *Marshall v. Lockhead*, 245 S.W.2d 307, 308 (Tex. Civ.App.1952); *Crain v. Foster*, 230 Ark. 190, 322 S.W.2d 443, 445 (1959); 46 Am. Jur.2d Judgments § 51, p. 350; and § 629, p. 788; 49 C.J.S. Judgments § 453, p. 884. See also *Rhodus v. Geatley*, 347 Mo. 397, 147

S.W.2d 631, 637 (1941); *Clark v. Mississippi Valley Trust Co.*, 357 Mo. 785, 211 S.W.2d 10, 16 (1948); *Pierson v. Pierson*, 369 S.W.2d 272, 277[7, 8] (Mo.App.1963); *Magenheim v. Board of Education*, 347 S.W.2d 409, 419 (Mo.App.1961); *Owen v. City of Branson*, 305 S.W.2d 492, 497 (Mo.App. 1957).

■ In order for Wesley to have had the standing to institute the Illinois will contest, it was necessary that he be the son (natural or adopted) of John Oliver; that is to say, merely living with the Olivers as a foster child would not alone accord him that standing. *Crumley v. Worden*, 201 Ill. 105, 66 N.E. 318 (1903); *Wohlgemuth v. Browning*, 384 S.W.2d 820, 825[1] (Mo.App.1964); *In Re Stoiber's Estate*, 101 Colo. 192, 72 P.2d 276 (1937).

Long prior to the institution of the Illinois will contest Wesley knew that the 1920 adoption decree was of doubtful validity. He knew of the specific imperfection, lack of the consent of his natural parents, which is the basis of his present attack upon that decree. He had discussed that matter with attorney Wolf. Despite such knowledge Wesley's complaint in the will contest was filed upon the express theory that Wesley was the son of John Oliver. He knew of course that he was not Oliver's natural son. In effect the complaint recognized and was bottomed on the validity of the 1920 adoption decree.[6] Having recognized the

5. In answers to interrogatories in the instant proceeding, Wesley denied that he received, "by inheritance or otherwise," any property, real or personal, from John Oliver or Harriet Oliver or either of their estates.

6. It may well be, which need not be decided, that both Illinois and Missouri would have recognized Wesley as the child of John Oliver under the doctrine of equitable adoption, which the courts of each state recognize. *Lukas v. Hays*, 283 S.W.2d 561, 566 (Mo.1955). Among the very few cases which have considered the question, there is a split of authority on whether a child who has been equitably adopted has standing to contest the will of the adoptive parent. See 112 A.L.R. 1422.

The Illinois complaint filed by Wesley makes no mention of equitable adoption; it alleged no facts which would support the invocation of

that doctrine; it alleged, many times, that Wesley *was* the son of the testator, not that he should be *declared to be the son* or that the testator and his privies should be *estopped* to deny the relationship.

"[W]e can not agree to the contention that there can be an adoption by contract and performance without *either* compliance with 'the statutory formalities required by law relating to the adoption of children,' *or a decree of a court of equity* based upon equitable principles and *decreeing* an equitable adoption." *Menees v. Cowgill*, 359 Mo. 697, 223 S.W.2d 412, 416 (1949) (emphasis added).

Wesley's complaint in the Illinois will contest neither mentioned nor sought such a "decree of a court of equity." This is not to say that, had it done so, this appeal would necessarily receive a different disposition.

validity of that decree, and having benefited to the extent of $1,500 (which he still retains) by reason of such recognition, Wesley may not now challenge its validity.[7]

It follows that Wesley is not an heir of Ralph Tapp and is not entitled to the distribution of his estate.

The judgment is reversed and the cause remanded for further proceedings consistent with the views expressed herein.

It is so ordered.

All concur.

---

**7.** Although Wesley testified that the Illinois will contest was filed without his authority, and that it was his intention to file a *claim* against the Oliver estate, this court has determined that his testimony is not believable. In effect it conflicted with the testimony of attorney James Wolf who filed the Illinois proceeding. The trial court made no finding with regard to the truthfulness of Wesley's testimony and it did not figure in the trial court's holding.