**John Mark STROLE and Virginia Strole, Plaintiffs–Appellants and Cross–Appellees,**

v.

**Gary L. GUYMON and Lucinda Kemmis, Defendants–Appellees and Cross–Appellants.**

No. 00CA2056.

Colorado Court of Appeals, Div. I.

Nov. 8, 2001.

Weaver & Fitzhugh, Michael F. Deneen, Montrose, CO, for Plaintiffs–Appellants and Cross–Appellees.

Overholser & Slee, P.C., Andrew J. Slee, Montrose, CO, for Defendants–Appellees and Cross–Appellants.

Opinion by Judge TAUBMAN.

This case involves a dispute between two neighbors in rural Montrose County over ditch rights and delivery of irrigation water. Plaintiffs, John Mark Strole and Virginia Strole, appeal from the trial court's judgment denying them access to a water delivery ditch on the property of defendants, Gary L. Guymon and Lucinda Kemmis (Guymons), and ruling that the Stroles have no right to continued water rotation with the Guymons. The Guymons cross-appeal those parts of the judgment requiring them to pay a pro rata share of the cost of a new water delivery system on the Stroles' property and continuing the water rotation scheme until the new irrigation system is implemented. We affirm.

The Stroles own approximately nine acres located directly north of the Guymons' ten-acre parcel. Each parcel is rectangular in shape and both are bordered by Highway 90 on the east. In addition, each parcel has associated water rights from the Uncompaghre Valley Water Users Association. The Stroles' water interest is .17 cubic feet of water per second (cfs) for their 8.6 shares of irrigation water, and the Guymons' interest is .22 cfs or 2.8 shares at 100 percent. Both parties use the irrigation water primarily for landscaping. However, the Stroles use the western portion of their land for a hay crop.

Three ditches, the eastern ditch, the western ditch, and the Price ditch, cross both properties. Each party's share of water enters the Guymons' property at the southeastern corner through the eastern ditch. The Price ditch, which is not involved in the parties' dispute, is located between the eastern and western ditches.

The Stroles purchased their property in 1979. Since that time, the Stroles and the Guymons, or the Guymons' predecessor, have rotated the water shares between the two properties so that the combined shares were used half the time on the Stroles' property and half the time on the Guymons' property. The Guymons purchased their property in 1995.

Since 1979, the allotted water flowed from the Guymons' property to the Stroles' prop-

erty through the eastern and western ditches. Water flowing through the eastern ditch has irrigated the eastern portion of the Stroles' property, while water flowing through the western ditch has irrigated the western portion.

Because of the location of the Price ditch and the natural contours of the land, a flume on the Guymons' property located between the eastern and western ditches allowed water to flow from the eastern to the western ditch and to cross the Price ditch.

The rotation of the entire water allotment ensured that the Stroles had enough water to flow though the western portion of their property. In other words, without rotation or modifications to the Stroles' irrigation system, the Stroles do not have enough water pressure to keep water flowing in their fields.

The water rotation scheme since 1979 was as follows: (1) between 1979 and 1981, and again between 1990 and 1995, the Guymon parcel was not irrigated, and the Stroles had full use of the entire water allotment; (2) from 1982 to 1990, the Stroles leased the Guymon parcel from the Guymons' predecessor and rotated the water between the two properties; (3) in 1997 and 1998, the Guymons and Stroles verbally agreed to continue the water rotation scheme. The record is unclear on the rotation arrangement for 1996. However, throughout this time, the Stroles had unrestricted use of the western ditch for water delivery.

This dispute began in 1999, when the Guymons discontinued the water rotation arrangement and the Stroles' use of the western ditch for water delivery. The Stroles filed a complaint seeking injunctive relief and damages, alleging that the Guymons had interfered with their water rights and deprived them of their property interest in the western ditch.

The trial court issued a preliminary injunction continuing the existing water rotation agreement.

After a trial to the court, the court determined that the Stroles had an easement over the Guymons' property to receive their water. However, the court also determined that the Stroles had no basis to impose a rotation system on the Guymons.

In fashioning an equitable remedy, the trial court ordered that: (1) the Stroles receive all their water allocation through the eastern ditch; (2) the parties install a diversion splitter box on the southeastern portion of the Guymons' property to ensure that the parties receive appropriate water allocation; (3) the parties build a flume system on the Stroles' property so that water can flow from the eastern ditch to the western portion of the Stroles' property; and (4) the parties share all costs, pro rata, based on their water allocation.

## I. Water Rotation

■ The Stroles contend that the trial court erred in concluding that there was no contractual or other basis upon which to impose a rotation system on the Guymons. We disagree.

■ Initially, we note that while some courts have used water rotation to quantify water rights, it does not follow that ownership of water rights gives rise to rotation. *See Andreatta v. Andreatta*, 537 P.2d 748 (Colo.App.1975)(not selected for official publication)(court relied on water rotation to show constructive notice of distribution of water).

The Stroles rely primarily on *Brighton Ditch Co. v. City of Englewood*, 124 Colo. 366, 237 P.2d 116 (1951). There, the court addressed the issue of whether the defendants could change a water diversion point, which would have deprived the plaintiffs of any rotation benefits. In resolving this issue, the court stated, "[t]here is no vested right by one ditch cotenant to rotation in use of water with another, in the absence of contract therefor, and no evidence either of contract or even *long-continued custom* here appears." *Brighton Ditch, supra*, 124 Colo. at 374, 237 P.2d at 121 (emphasis added).

Even if we were to assume that a right to rotation could be predicated on long-continued custom, the Stroles have not provided any evidence of historical custom except for their agreements with the Guymons or the Guymons' predecessors.

For the entire relevant period, rotation was accomplished by agreement or by default when the Guymon parcel was not irrigated. However, in 1999, before the irrigation season began, the Guymons withdrew their consent to use of their water allocation on the Stroles' property. Because the parties agreed to rotation, such agreement could be abrogated at will, at any time, by either party. *See generally Collins v. Shanahan,* 34 Colo.App. 82, 523 P.2d 999 (1974)(one of the chief characteristics of a tenancy at will is the right of either party to terminate the lease at will), *aff'd in part and rev'd in part on other grounds,* 189 Colo. 169, 539 P.2d 1261 (1975).

We are also not persuaded to reach a different conclusion by the Stroles' reliance on *Wagner v. Allen (In re Water Rights of Certain Shareholders in Las Animas Consolidated Canal Co.),* 688 P.2d 1102 (Colo. 1984), and *Bagwell v. V–Heart Ranch, Inc. (In re Water Rights of V–Heart Ranch, Inc.),* 690 P.2d 1271 (Colo.1984). While *Wagner* states that water rotation is an integral part of water management, the supreme court there expressly rejected the applicant's contention that the water court erred in failing to impose a water delivery pattern consistent with the established rotational pattern.

Similarly, in *Bagwell,* the supreme court did not attach a legal right to the practice of rotating water. Rather, the court stated that an agreement to rotate water will not defeat a claim of continuous and exclusive possession with respect to the adverse possession of water rights.

Therefore, we conclude, as did the trial court, that the Guymons were free to terminate the rotation agreement. We also conclude that the Stroles' water rights exist independently of any rotation agreement.

## II. Ditch Access

The Stroles contend that the trial court erred in severely limiting their right to use the western ditch based on a balancing of equities approach to easements. We disagree.

An easement is a right conferred by grant or acquired by prescription authorizing one to do or maintain something on the land of another. It is a privilege existing distinct from the ownership of the land itself; nevertheless, it is an interest in land. *DeReus v. Peck,* 114 Colo. 107, 162 P.2d 404 (1945).

Generally, a party who claims an easement must prove the existence of the easement by a preponderance of the evidence. *See generally Thompson v. Whinnery,* 895 P.2d 537 (Colo.1995)(person claiming implied easement of necessity has burden of proving existence of easement); *Proper v. Greager,* 827 P.2d 591 (Colo.App.1992)(party claiming prescriptive easement must prove, by a preponderance of the evidence, continuous, open, and adverse use of easement for statutory period of eighteen years).

Additionally, before a trial court can decree an easement, the area involved must be subject to reasonable determination. *Rivera v. Queree,* 145 Colo. 146, 358 P.2d 40 (1960).

Here, notwithstanding the fact that the trial court determined that no established easement over the western ditch had been shown, the Guymons acknowledge that the Stroles possess two easements for the delivery of water over their property along the eastern and western ditches.

The property burdened by the easement is known as the servient estate, while the property benefited by the easement is called the dominant estate. *Lazy Dog Ranch v. Telluray Ranch Corp.,* 965 P.2d 1229 (Colo.1998). In fashioning a remedy between the owners of the dominant and servient estates, effecting a compromise between the parties' positions is often the best resolution of an easement question. *Lazy Dog Ranch v. Telluray Ranch Corp.,* 923 P.2d 313 (Colo.App.1996)(court effected a compromise in determining whether cattle gates were an unreasonable burden on an express easement).

Generally, a trial court may exercise its discretion to fashion equitable remedies to resolve a dispute concerning ditches and the rights to water transported in those ditches. An appellate court will not disturb such rulings absent an abuse of discretion. *See St.*

*Jude's Co. v. Roaring Fork Club, L.P.,* 15 P.3d 281 (Colo.App.1999)(*cert. granted* Dec. 18, 2000)(court exercised appropriate equitable power in drafting injunction outlining specific ditch improvements based on one of the plaintiff's alternatives).

Having concluded that the Stroles had not established a contractual or other basis to impose a rotation system upon the Guymons, the trial court weighed the parties' interests in effecting an equitable remedy. Accordingly, it heard testimony from both parties, including expert testimony, concerning the most desirable method of water delivery. The trial court considered the technical feasibility of each method, the costs involved, the burden on each party in implementing and maintaining the delivery methods, the amount of interaction between the parties associated with the continued use of each method, and the need to ensure that each party received its full water allocation.

After considering this evidence, the trial court effected a compromise by balancing the interests of both parties. Because we find adequate evidence in the record to support the trial court's remedy, we conclude that the trial court did not abuse its discretion.

■ Moreover, we are not persuaded by the Stroles' reliance on *Campbell v. Kelsall,* 717 P.2d 1019 (Colo.App.1986), to reach a different conclusion. In *Campbell,* a division of this court held that § 37–86–105, C.R.S. 2001, did not authorize the defendants there to plow under one of the plaintiffs' two irrigation ditches. Section 37–86–105 provides generally that a servient estate shall not be burdened with two irrigation ditches when the object of carrying water to the dominant estate "can feasibly and practicably be attained by uniting and conveying all the water necessary to be conveyed through such property through one ditch or other structure." However, the *Campbell* division held that that statute did not apply "where the ditches in question are already in existence and the rights of the parties in such ditches are already vested." *Campbell, supra,* 717 P.2d at 1020.

Thus relying on *Campbell,* the Stroles maintain that, because the western ditch here has been in existence for a long period,

they should be allowed to continue to use it to the same extent as before. We disagree. Even though the ditches here have been in existence for a long period, it does not follow that a court cannot limit the use of a pre-existing ditch in order to resolve equitably a dispute concerning use of two irrigation ditches. Further, here, unlike in *Campbell,* a second irrigation ditch was not destroyed; rather, its use was limited.

Thus, the trial court acted within its discretion when it limited the Stroles' use of the western ditch to wastewater and overflow.

### III. Stroles' Appeal on Allocation of Costs

The Stroles next contend that the trial court erred by not requiring that the Guymons bear the entire cost of the new irrigation system. Again, we disagree.

In light of the above discussion, we conclude that the trial court did not abuse its discretion by allocating the costs of the irrigation system improvements between the parties as part of its equitable relief.

### IV. Guymons' Cross–Appeal on Allocation of Costs

■ On cross-appeal, the Guymons contend that the trial court erred by ordering that they pay a pro rata share, based on their water allocation, for ditch improvements located wholly off their land. We are not persuaded.

The trial court, as part of its equitable relief, fashioned a remedy that it determined fairly allocated the costs between the parties. Additionally, we note that while the Guymons are responsible for a portion of the costs to improve the irrigation system on the Stroles' land, they will no longer be burdened to the same extent by the Stroles' access along the western ditch.

Again, in light of the discussion in Part II, we conclude that the trial court did not abuse its discretion.

### V. Preliminary Injunction

■ The Guymons further contend that the trial court should have dissolved the preliminary injunction continuing the rotation

scheme when it entered its permanent order. We are not persuaded.

At the preliminary injunction hearing in June 1999, the trial court ordered the rotation agreement between the parties to continue. In addition, the court established terms for implementation of the rotation agreement, including maintenance of the western ditch, communication between the parties, and making shares of water available to each party during a rotation period.

In its final order entered in April 2000, the trial court stated, among other things, that the previous order regarding rotation would continue in effect until the parties completed implementation of the irrigation improvements.

In July 2000, the Guymons filed a motion to dissolve the preliminary injunction. A month later, the Stroles requested the court stay further enforcement of its order pending this appeal. The trial court denied the motion to dissolve the preliminary injunction and granted the motion for stay.

While we agree that the purpose of a preliminary injunction is to preserve the status quo between the parties until a full hearing and ruling on the merits are obtained, *Atmel Corp. v. Vitesse Semiconductor Corp.*, 30 P.3d 789 (Colo.App.2001), we do not characterize the trial court's continuation of the rotation agreement as a continuation of the preliminary injunction after a final judgment.

Rather, we view this aspect of the trial court's judgment as no more than a component of its equitable relief, making sufficient water available to the parties until the new irrigation system is in place.

The judgment is affirmed.

Judge METZGER and Judge NEY concur.