The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
May 26, 2022

**2022COA58**

**No. 21CA0263, *Estate of Garcia* — Jurisdiction of Courts — Standing; Probate — Effect of Homicide on Intestate Succession, Wills, Trusts, Joint Assets, Life Insurance, and Beneficiary Designations — Slayer Statute**

This opinion answers the unresolved questions of whether a person who has no legal relationship with a decedent's heirs has standing to assert a slayer statute claim in the name of the heirs, or whether a person who could not obtain a financial benefit from the forfeiture or revocation sections of the statute may assert a slayer statute claim solely to obtain a judicial determination that the defendant feloniously killed the decedent. A division of the court of appeals concludes that a person who has no legal relationship with the decedent's heirs lacks standing to assert a claim under the slayer statute for the heirs' financial benefit and that a party who cannot gain financially from the forfeiture or revocation sections of

the slayer statute may not bring a claim solely to obtain a judicial determination that the defendant feloniously killed the decedent.

Court of Appeals No. 21CA0263
Alamosa County District Court No. 16PR30038
Honorable Martin A. Gonzales, Judge

In re the Estate of Deborah Gene Garcia, deceased.

Julius Garcia,

Appellant,

v.

Krysta Bialozor, as Personal Representative of the Estate of Deborah Gene Garcia, and Diana Strong,

Appellees.

JUDGMENT AFFIRMED IN PART
AND REVERSED IN PART

Division III
Opinion by JUDGE LIPINSKY
Gomez and Davidson*, JJ., concur

Announced May 26, 2022

Erich Schwiesow, P.C., Erich Schwiesow, Alamosa, Colorado, for Appellant

Staggs Morris, P.C., Ernest Staggs, Denver, Colorado, for Appellee Krysta Bialozor

Hutchinson Black & Cook, LLC, John C. Clune, Meghan C. Hungate, Boulder, Colorado, for Appellee Diana Strong

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2021.

¶ 1     Nearly a century ago, Colorado enacted a "slayer statute" to bar felonious killers from gaining a financial benefit from the killing. Yet, until today, no published Colorado case has considered whether a person who has no legal relationship with a decedent's heirs has standing to assert a slayer statute claim in the name of the heirs, or whether a person who could not obtain a financial benefit from the forfeiture or revocation sections of the statute may assert a slayer statute claim solely to obtain a judicial determination that the defendant feloniously killed the decedent.

¶ 2     We hold that a person who has no legal relationship with the decedent's heirs lacks standing to assert a claim under the slayer statute for the heirs' financial benefit. We further hold that a party who cannot gain financially from the forfeiture or revocation sections of the slayer statute may not bring a claim solely to obtain a judicial determination that the defendant feloniously killed the decedent.

## I.     Background

¶ 3     Deborah Gene Garcia (the decedent) was thirty-four years old at the time of her death. Her husband, Julius Garcia (father), reported that he found the decedent "face down" in bed and

unresponsive several hours after they had engaged in "kinky sex," during which her hands were tied to the bed.

¶ 4 The decedent did not leave a will. She was survived by father and their children, Krysta Bialozor and A.G. (the children). (We refer to A.G. by his initials because, unlike Bialozor, he was a minor when this case was filed.) Father was the decedent's sole heir. The children lived with father following their mother's death.

¶ 5 The report of an autopsy performed the day after the decedent's death noted evidence supporting a conclusion that she had died of terminal cardiac arrhythmia resulting from an existing heart condition.

¶ 6 Twelve years later, the decedent's sister, Diana Strong, obtained a second opinion regarding the cause of the decedent's death. After analyzing tissue samples from the decedent's body and reviewing other information, a pathologist concluded that the decedent's death was not the result of cardiac arrhythmia but, rather, of pulmonary edema. The pathologist said that causes of pulmonary edema include "intoxication, mechanical asphyxiation, smothering, cho[]king, neck compression using ligature, . . . and

2

hyper/hypothermia." The pathologist reported that these causes of pulmonary edema needed to be "further examined and considered."

¶ 7 Armed with the pathologist's report, Pete DeHerrera, the decedent's father, sued father under the slayer statute. DeHerrera sought a court order that included

(1) a determination under the slayer statute that father feloniously caused the decedent's death;

(2) a determination under the slayer statute that the children are the decedent's sole heirs; and

(3) a judgment directing father to "forfeit his rights to all assets belonging to or in which Decedent had an interest, and in which he was named as a beneficiary or received benefits under the statutes and governing instruments," and to "account for and disgorge to the [children] all proceeds from their sale and transfer."

¶ 8 Bialozor was an adult and A.G. was a minor when DeHerrera filed the petition. At the time, the children were not parties to the case.

¶ 9 Several weeks after DeHerrera filed the petition, Bialozor, through counsel, filed an objection to the petition. In her objection,

Bialozor sought dismissal of the petition, including the claims that DeHerrera asserted on her behalf.

¶ 10     Because A.G. was a minor at the time, the court appointed a guardian ad litem (GAL) for him.  The GAL recommended that the court dismiss the case, "as dismissal of this action would be in [A.G.]'s best interest."

¶ 11     Strong later joined the case as co-petitioner, and after DeHerrera was dismissed from the case, she became the sole petitioner.

¶ 12     Early in the case, father filed several motions, including a motion to dismiss on the grounds that (1) DeHerrera and Strong lacked standing to bring the slayer statute claims asserted in the petition and (2) their claims were barred by the statute of limitations.  The court denied the motions.

¶ 13     After nearly four years of litigation, father made an offer of settlement in the amount of $500,000 to the children and Strong pursuant to section 13-17-202(1)(a)(II), C.R.S. 2021.  The children accepted the offer.  Strong accepted the offer conditionally in satisfaction of the "monetary claim" in the petition — the forfeiture claim asserted in the children's interest.  But she said that father's

offer did not address her "non-monetary claim" — her individual claim for a determination that father had feloniously killed the decedent.

¶ 14 After the children accepted father's offer of settlement, father moved for entry of final judgment pursuant to C.R.C.P. 54(b). The court denied the motion, however, reasoning that the children were "not the proper offerees with respect to the settlement offer" because, according to the court, "the heirs of the Decedent" are not the "sole beneficiaries that can litigate a claim under the slayer statute." The court said that Strong's individual claim "cannot be unilaterally extinguished by an agreement to settlement between [father] and [the children]."

¶ 15 Shortly before the scheduled trial date, father filed a Contingent Admission of Liability and Motion in Limine in which he said his "resources are exhausted," he "intends to rely on appeal on his defenses of standing and statute of limitations," and he "admits liability under § 15-11-803(7)(b) . . . to preserve his resources where they can be most usefully applied, i.e. to appealing this Court's rulings on [his] standing and statute of limitations defenses." He said that the "only . . . issues remain[ing] for trial" were damages

and the "facts relating to" his argument that DeHerrera and Strong's claims were barred by the applicable statute of limitations.

¶ 16 During a conference with the court conducted eighteen days later, counsel for father said that, although he was confessing liability under the slayer statute to effectuate his settlement with the children, he was not confessing liability to Strong, and he intended to pursue an appeal on "issues of standing and statute of limitations." He reiterated his position that Strong "has no financial stake in this matter at all." (In a later filing, however, father said "no issues remain for the Court to determine.")

¶ 17 The court accepted father's admission and entered an unconditional final judgment with two parts: (1) a judgment in favor of Strong on her "felonious killing claim" that reflected father's "admission of liability" and (2) a judgment against father in the amount of $500,000 "to be apportioned equally" between the children. In addition, the court awarded costs to Strong under C.R.C.P. 54(d).

## II. Discussion

¶ 18 Father contends the district court erred by (1) determining that DeHerrera and Strong had standing to assert claims under the

slayer statute; (2) deciding that DeHerrera and Strong's claims were not barred by the statute of limitations; and (3) awarding costs to Strong as the prevailing party under C.R.C.P. 54(d).

¶ 19     We conclude that DeHerrera and Strong lacked standing to seek relief under the slayer statute in the children's interest or in their individual capacities. Thus, we reverse the portion of the judgment reflecting the entry of judgment in favor of Strong — the court's acknowledgment of father's conditional admission of liability. Given our disposition, we reverse the court's award of costs to Strong and do not reach father's statute of limitations argument.

A.     DeHerrera and Strong's Standing under the Slayer Statute

¶ 20     We analyze DeHerrera and Strong's standing to bring (1) claims under the slayer statute for the benefit of the children and (2) their claim seeking a determination that father feloniously killed the decedent.

¶ 21     We conclude that DeHerrera and Strong lacked standing to bring claims in the interest of the children because they had no legal relationship with the children, Bialozor was above the age of majority, and the legal representatives of both children disavowed

7

DeHerrera's and Strong's efforts to seek relief on the children's behalf. Further, because neither DeHerrera nor Strong could have obtained a financial benefit under the forfeiture or revocation sections of the slayer statute, they lacked standing to assert a slayer statute claim in their own names.

### 1. Standard of Review

¶ 22    "We . . . review de novo a trial court's interpretation and application of a statute." *May v. Petersen*, 2020 COA 75, ¶ 11, 465 P.3d 589, 592. "Our goal in interpreting a statute is to give effect to the legislature's intent. We read statutory words and phrases in context, interpret them according to their plain meaning, and construe them according to the rules of grammar and common usage." *Id.* (citation omitted).

¶ 23    We also review issues of standing de novo. *Aurora Urb. Renewal Auth. v. Kaiser*, 2022 COA 5, ¶ 13, ___ P.3d ___, ___.

### 2. The Law of Standing

¶ 24    "In order for a court to have jurisdiction over a dispute, the plaintiff must have standing to bring the case. Standing is a threshold issue that must be satisfied in order to decide a case on the merits." *Ainscough v. Owens*, 90 P.3d 851, 855 (Colo. 2004).

"[A] plaintiff must satisfy two criteria in order to establish standing. First, the plaintiff must have suffered an injury-in-fact, and second, this harm must have been to a legally protected interest." *Id.* (citation omitted).

¶ 25 "We have interpreted the first prong of Colorado's test for standing to require 'a concrete adverseness which sharpens the presentation of issues that parties argue to the courts.'" *Id.* at 856 (quoting *City of Greenwood Village v. Petitioners for Proposed City of Centennial,* 3 P.3d 427, 437 (Colo. 2000)). The injury may be tangible or intangible. *Id.* The second prong "requires that the plaintiff have a legal interest protecting against the alleged injury. This is a question of whether the plaintiff has a claim for relief under the constitution, the common law, a statute, or a rule or regulation." *Id.* (citation omitted).

3. The Claims that DeHerrera and Strong Asserted
in the Children's Interest

a. DeHerrera and Strong Lacked Standing to Assert Claims
on Behalf of Bialozor Because She Was an Adult

¶ 26 Generally, "an adult must sue and be sued in his or her own name." *Harmatz v. Harmatz,* 457 A.2d 399, 401 (D.C. 1983); *see* C.R.C.P. 17(a) ("Every action shall be prosecuted in the name of the

real party in interest . . . .").  A person has no right to assert a claim on behalf of another adult unless that individual "has been formally divested of the legal capacity to sue and be sued, by being adjudicated incompetent or by having been placed under guardianship as to person and property."  *Harmatz*, 457 A.2d at 401.

¶ 27    Here, it is undisputed that Bialozor was never adjudicated incompetent or placed under guardianship.  She was not a "protected person" who was incapable of protecting her own interests in litigation.  Strong does not explain why DeHerrera or she possessed the authority to assert a claim under the slayer statute in the name of another adult, much less an adult who told the court she opposed the relief DeHerrera and Strong were seeking on her behalf.

¶ 28    Accordingly, we hold that DeHerrera and Strong lacked standing to assert claims on behalf of Bialozor.  *Cf. Vandiver v. Hardin Cnty. Bd. of Educ.*, 925 F.2d 927, 930 (6th Cir. 1991) (noting that an adult may have the right to represent a child's interest in a case until the child reaches the age of majority and can represent himself or herself).

### b. DeHerrera and Strong Lacked Standing to Assert Claims on Behalf of A.G. After His Guardian ad Litem Disavowed Those Claims

¶ 29    In certain instances, an adult may bring an action on behalf of a child.  *See* C.R.C.P. 17(c) ("Whenever an infant or incompetent person has a representative, such as a general guardian, conservator, or other like fiduciary, the representative may sue or defend on behalf of the infant or incompetent person.").  Neither DeHerrera nor Strong was A.G.'s legal representative or was otherwise authorized to bring an action in his interest, however.  Moreover, neither sought judicial appointment of a guardian for the children pursuant to § 15-14-204, C.R.S. 2021.

¶ 30    We consider DeHerrera and Strong's standing to assert claims on behalf of A.G. by reviewing the relevant provisions of the Probate Code, in which the slayer statute appears.  Under the Probate Code, "a court may appoint a [GAL for a minor] if the court determines that representation of the [minor's] interest otherwise would be inadequate." § 15-14-115, C.R.S. 2021; *see also* C.R.C.P. 17(c) ("The court shall appoint a [GAL] for an infant or incompetent person not otherwise represented in an action . . . .").  Based on this authority, the court appointed a GAL for A.G.  Once the court made

that appointment, DeHerrera and Strong had no standing to pursue claims on behalf of A.G.

¶ 31     Because neither DeHerrera nor Strong had standing to bring claims on behalf of the children, the district court erred by denying father's motion to dismiss those claims.

### 4.    DeHerrera and Strong Lacked Standing to Assert Claims Under the Slayer Statute in an Individual Capacity

¶ 32     We next determine whether DeHerrera and Strong had standing to assert a claim under the slayer statute in their own names to obtain a determination that father had feloniously killed the decedent.  (As noted, DeHerrera's and Strong's petitions claimed the children were the sole heirs of the decedent's estate.  Thus, DeHerrera and Strong conceded that they were *not* heirs and, therefore, had no legal right to any portion of the decedent's estate so long as the children were living.  *See* § 15-11-103(2), C.R.S. 2021 (statute governing intestate succession); *see also In re Estate of Elliott,* 993 P.2d 474, 475 (Colo. 2000).)  We conclude that DeHerrera and Strong lacked standing to assert their individual claim under the slayer statute.

12

### a. Applicable Law

¶ 33    The key sections of the slayer statute deprive a person of the benefits of a decedent's estate or other governing instruments upon a judicial determination that the person feloniously killed the decedent. *See* § 15-11-803(2), C.R.S. 2021. (Although the General Assembly amended the slayer statute in 2022, *see* Ch. 60, sec. 11, § 15-11-803, 2022 Colo. Sess. Laws 277-78, those amendments do not apply here.)

¶ 34    "An individual who feloniously kills the decedent forfeits all benefits with respect to the decedent's estate . . . ." § 15-11-803(2). "If the decedent died intestate, the decedent's intestate estate passes as if the killer disclaimed his or her intestate share." *Id.* A determination of a felonious killing also revokes the killer's benefits under certain instruments, § 15-11-803(3)(a), and "[s]evers the interests of the decedent and killer in property held by them at the time of the killing as joint tenants with the right of survivorship or as community property with the right of survivorship," § 15-11-803(3)(b). Further, under section 15-11-803(6), "[a] wrongful acquisition of property or interest by a killer not covered

13

by this section shall be treated in accordance with the principle that a killer cannot profit from his or her wrong."

¶ 35 A felonious killing under the slayer statute can be established in one of two ways: (1) a "judgment of conviction establishing criminal accountability for the felonious killing of the decedent," § 15-11-803(7)(a); or (2) a judicial determination, by a preponderance of the evidence, of each of the elements of felonious killing, § 15-11-803(7)(b).

¶ 36 Only an "interested person" may bring an action under the slayer statute. § 15-11-803(7)(b).

> "Interested person" includes heirs, devisees, children, spouses, creditors, beneficiaries, trust directors, *and any others having a property right in or claim against a trust estate or the estate of a decedent . . . , which may be affected by the proceeding. . . .* The meaning as it relates to particular persons may vary from time to time and is determined according to the particular purposes of, and matter involved in, any proceeding.

§ 15-10-201(27), C.R.S. 2021 (emphasis added).

### b. DeHerrera and Strong Are Not "Interested Persons" for Purposes of the Slayer Statute

¶ 37 Strong asserted that she and DeHerrera had standing to pursue their claims under the slayer statute based on three

14

interests: (1) "the welfare" of the children; (2) "a property right in Decedent's estate that may be affected by the proceeding"; and (3) "determining the cause of the Decedent's homicide and . . . preventing her killer from profiting from his crime."

¶ 38     We have already established that Strong and DeHerrera lacked standing under the slayer statute to assert claims in the children's interest. As noted, DeHerrera and Strong admitted in the petition that they were not heirs. In addition, counsel for Strong conceded at oral argument that Strong had no financial interest in the decedent's estate. (Strong does not contend that DeHerrera had a financial interest in the estate.)

¶ 39     Thus, our standing analysis focuses on whether Strong and DeHerrera were authorized to assert claims under the slayer statute to further the "intangible interest" of "seeking justice."

¶ 40     In its order denying father's motion to dismiss, the district court concluded such an "intangible interest" is a legally protected interest under the slayer statute. The court pointed to the last sentence of the definition of "interested person," which says the term "may vary from time to time and is determined according to the particular purposes of, and matter involved in, any proceeding."

§ 15-10-201(27). It concluded that, because the slayer statute "does not have any limiting language that requires a pecuniary interest," and the "origin" of the slayer statute "stems from common law principles of equity," Strong established standing through her intangible interest in obtaining a determination that father had killed her sister.

¶ 41 The court's reasoning, however, is inconsistent with the structure and language of the slayer statute for at least three reasons.

¶ 42 First, under the principle of construction known as *ejusdem generis*, "when a general term follows a list of specific things, the general term applies only to things of the same general class as those specifically mentioned." *Cap. One, N.A. v. Colo. Dep't of Revenue*, 2022 COA 16, ¶ 19, ___ P.3d ___, ___. Although Strong is correct that the use of the word "includes" immediately before "heirs, devisees, children, spouses, creditors, [and] beneficiaries" in section 15-10-201(27) indicates that those terms are not exhaustive, *see Colo. Common Cause v. Meyer*, 758 P.2d 153, 163-64 (Colo. 1988), the terms are illustrative of the type of person who may be an "interested person." Further, the specific list is

followed by the limiting phrases "any others *having a property right in or claim against a trust estate or the estate of a decedent . . .*" and "persons having priority for an appointment as a personal representative and *other fiduciaries representing the interested person.*" § 15-10-201(27) (emphases added).

¶ 43 The restrictive language in the first two sentences of the definition of "interested person" would be rendered meaningless if the statement that the scope of "interested person" may "vary from time to time and is determined according to the particular purposes of, and matter involved in, any proceeding" encompassed persons who lacked "a property right in or claim against a trust estate or the estate of a decedent" or were not acting on behalf of such persons. The last sentence of the definition of "interested person" cannot swallow up and render meaningless the rest of the definition.

¶ 44 Second, a determination of who has standing to bring a slayer statute claim must also consider the purpose of the statute. "The sole purpose of a 'slayer statute' is to prevent the slayer from benefitting from the death of the victim or profiting from the wrongdoing." *In re Estate of Miller*, 02-CA-00231-SCT (¶ 5) (Miss. 2003), 840 So. 2d 703, 706 (emphasis omitted) (quoting 26B C.J.S.

17

*Descent and Distribution* § 57, at 362-63 (2001)); *see Wilkins v. Fireman's Fund Am. Life Ins. Co.*, 695 P.2d 391, 393 (Idaho 1985) ("The sole purpose of [the Idaho slayer statute] is to prevent a wrongdoer from profiting from his or her own wrong."). (Although the Mississippi and Idaho slayer statutes are worded differently from the Colorado statute, all three statutes are premised on the same policy goal: no person should gain a financial benefit by killing another. *Compare* § 15-11-803, C.R.S. 2021, *with* Miss. Code Ann. § 91-1-25 (West 2021), *and* Idaho Code Ann. § 15-2-803 (West 2021).) This goal cannot be achieved if persons who could not benefit from the financial provisions of the slayer statute nonetheless asserted claims under the statute.

¶ 45 Third, limiting standing in slayer statute claims to those persons with a property interest in or claim against the decedent's estate is consistent with other types of claims permitted under the Colorado Probate Code. For example, "[u]nless the contestant will take or may take by an adjudication that the will in question i[s] invalid he had not sufficient interest to give him legal standing to contest its validity." *In re Stoiber's Est.*, 101 Colo. 192, 197, 72 P.2d 276, 278 (1937); *see In re Estate of Bonfils*, 190 Colo. 70,

75, 543 P.2d 701, 705 (1975) (holding that a decedent's ex-spouse lacks standing to assert a claim against the decedent's estate); *Foster v. Kragh*, 107 Colo. 389, 397, 113 P.2d 666, 670 (1941) (noting that heirs who would be entitled to the estate's real estate located in Colorado have the right to contest the decedent's foreign will). We are aware of no Colorado probate case holding that a person lacking a financial interest in a decedent's estate may challenge the decedent's will.

¶ 46    For these reasons, we conclude that the court erred by ruling that Strong's asserted interest in "justice" provided her and DeHerrera with standing to assert individual claims under the slayer statute.

¶ 47    We reverse the portion of the court's judgment incorporating father's conditional admission of liability, which he made as part of his offer to settle Strong's "non-monetary" claim. We do not disturb the portion of the judgment entered to enforce the settlement between father and the children because Strong concedes the children have standing as heirs under the slayer statute and because the children accepted father's offer of settlement. We will

19

not interfere with an unconditional settlement entered into by consenting parties.

### B. The Award of Costs to Strong

¶ 48 The district court awarded costs to Strong under C.R.C.P. 54(d): "[R]easonable costs shall be allowed as of course to the prevailing party considering any relevant factors which may include the needs and complexity of the case and the amount in controversy."

¶ 49 Because Strong lacked standing to assert claims under the slayer statute, she cannot be a "prevailing party." Generally, a party cannot "prevail" on a claim she lacked standing to litigate. "Prevail" means "[t]o obtain the relief sought in an action" or "to win a lawsuit." Black's Law Dictionary 1438 (11th ed. 2019). A party who lacked standing to prosecute a claim cannot "obtain the relief sought" or "win a lawsuit."

¶ 50 Strong cannot be a prevailing party even though, through her pursuit of the claims on behalf of the children, she obtained a financial benefit for them — the $500,000 father agreed to pay in settlement. The determination of "prevailing party" rests on whether Strong had standing to assert a claim under the slayer

statute and not on whether she successfully but gratuitously negotiated a settlement for the children. Because no party argues that any party other than Strong prevailed, we do not address who is the prevailing party following our resolution of this appeal.

¶ 51 Thus, we reverse the court's award of costs to Strong. In light of this holding, we need not address father's argument concerning the amount of costs awardable to Strong.

### III. Conclusion

¶ 52 The portion of the judgment determining that father feloniously killed the decedent and the order awarding costs to Strong are reversed.

JUDGE GOMEZ and JUDGE DAVIDSON concur.