23CA1099 Smith v Bowman 08-29-2024 COLORADO COURT OF APPEALS Court of Appeals No. 23CA1099 El Paso County District Court No. 20CV31169 Honorable Michael P. McHenry, Judge Shawn A. Smith, Plaintiff-Appellee, v. Ronald S. Bowman; Ronald S. Burgar, as Trustee of the Lois M. Burgar Trust dated December 2, 1998; Marian G. Carter; Bruce Bradley Schardt; Lori Anne Schardt; Michal Railsback; Lindsay Ann Railsback; James F. Higgins, Jr.; and Audrey M. Higgins f/k/a Audrey M. Miller, Defendants-Appellants. JUDGMENT AFFIRMED AND CASE REMANDED WITH DIRECTIONS Division II Opinion by JUDGE GROVE Fox and Sullivan, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced August 29, 2024 Mulliken Weiner Berg & Jolivet P.C., Trevor J. Young, Erin M. Leach, Colorado Springs, Colorado, for Plaintiff-Appellee Alpern Myers Stuart LLC, Gregory M. O’Boyle, Colorado Springs, Colorado; Linden Kominek, P.C., Mary Kominek Linden, Colorado Springs, Colorado, for Defendants-Appellants
1 ¶ 1 In this action to determine the existence of an implied easement, defendants, Ronald S. Bowman; Ronald S. Burgar, as Trustee of the Lois M. Burgar Trust dated December 2, 1998; Marian G. Carter; Bruce Bradley Schardt; Lori Anne Schardt;
1 Michal Railsback; Lindsay Ann Railsback; James F. Higgins, Jr.; and Audrey M. Higgins f/k/a Audrey M. Miller (collectively, Defendants), appeal the district court’s judgment in favor of plaintiff, Shawn A. Smith. Because the district court correctly granted in full Smith’s requested easement based on his claim for an easement implied by prior use, we affirm and remand for the determination of Smith’s appellate costs.
2 1 Bruce Bradley and Lori Anne Schardt are listed on the caption pages of both parties’ briefs; however, it appears that the Schardts do not access their property through any of the properties at issue in this appeal and have never participated in this litigation. A clerk’s entry of default against the Schardts was approved by the district court in November 2020. 2 We do not reach Defendants’ contention on appeal that Smith failed to prove his entitlement to an easement implied by necessity because Smith’s successful claim for an easement implied by prior use is sufficient to affirm the district court’s judgment. See City of Aurora v. Colo. Dep’t of Rev., 2023 COA 17, ¶ 11 (“An appellate court may . . . affirm on any ground supported by the record.” (quoting McLellan v. Colo. Dep’t of Hum. Servs., 2022 COA 7, ¶ 10)). 
2 I. Background ¶ 2 We draw the following factual background from the record and the district court’s order issued after a bench trial. The court’s findings have record support. A. The Relevant Land ¶ 3 The dispute between Smith and Defendants concerns neighboring parcels of land in El Paso County. In 1948, these parcels were under the common ownership of Elmer and Pearl Brown (the parcels marked in blue on the map below). ¶ 4 Between 1948 and 1952, a series of real estate transactions divided this land as follows. 
3 ¶ 5 On April 1, 1948, the Browns conveyed land to John R. Clint and Ralph M. Kinder (the yellow cross-hatched parcel marked on the map below). ¶ 6 On September 26, 1949, the Browns conveyed land to Rosemary Callahan (the pink cross-hatched parcel marked on the map below). 
4 ¶ 7 On March 14, 1950, Rosemary Callahan conveyed land back to the Browns (the blue cross-hatched parcel marked on the map below). ¶ 8 On January 8, 1951, Elmer Brown conveyed land to Pearl Brown (the blue cross-hatched parcel marked on the map below). 
5 ¶ 9 On June 6, 1952, Pearl Brown conveyed land to Reuel and Anna Lahmer, who immediately conveyed the land to Ross and Elizabeth Haskin (the orange cross-hatched parcel marked on the map below). ¶ 10 On June 6, 1952, Charles and Leila Collins conveyed an easement to Pearl Brown. This easement provided “[a] right-of-way for roadway purposes only” over a private road extending northeast from North Chelton Road across the Collinses’ property for the benefit of Brown’s remaining land (what is today, Smith Parcel A, Smith Parcel B, and Higgins East Parcel, which we describe further below). 
6 ¶ 11 On June 6, 1952, Pearl Brown conveyed additional land to the Lahmers, who immediately conveyed the land to William and Alice Pearce (the bright green cross-hatched parcel marked on the map below). ¶ 12 On November 13, 1952, Pearl Brown conveyed land to the Lahmers, severing Parcel A and leaving it without access to the 
7 right-of-way easement that Brown received from the Collinses on June 6, 1952 (the dark blue cross-hatched parcel marked on the map below). ¶ 13 On December 11, 1952, the Lahmers conveyed land and the right-of-way easement to Judson and Ione Fellman (the brown cross-hatched parcel marked on the map below), severing Parcel B and reserving it no rights for use of the right-of-way easement. 
8 ¶ 14 Smith purchased Parcel A in February 2010 and Parcel B in March 2017. The virtually undeveloped
3 parcels are zoned for residential use but are landlocked (city-owned Palmer Park borders the parcels to the north, while private, residential real estate surrounds the parcels in all other directions). Following Smith’s purchases and other real estate transactions, the present division of the land once under the Browns’ common ownership is reflected in the map below. 3 According to the district court, “[t]hese parcels are essentially undeveloped except for the relics of a concrete foundation on Parcel A from what is assumed to be a small, long abandoned out-
building.” 
9 B. Smith’s Lawsuit ¶ 15 In June 2020, Smith filed a quiet title action seeking an easement implied by necessity and by prior use for ingress, egress, and utility rights “over and through certain real property owned by Defendants, which provides the sole access to [Smith’s] property,” as Smith intended to develop Parcels A and B (the Smith Parcels) for residential use. Specifically, Smith sought to obtain access to the private road described within the easement the Collinses conveyed to Pearl Brown on June 6, 1952 (which begins at North Chelton Road and is currently used by Defendants to access their properties and supply utilities) and to extend this easement to the Smith Parcels. The private road ends approximately seventy-one feet short of Parcel B, between the Higgins East and Higgins West Parcels. The map below reflects the private road (with its existing easements) and Smith’s requested extension. 
10 ¶ 16 After a four-day bench trial in which both sides presented lay and expert witness testimony, the district court issued a thorough written order finding that Smith had satisfied the elements for both an easement implied by necessity and an easement implied by prior 
11 use. The court granted in full Smith’s requested easement, awarding ingress, egress, and utility rights across the existing private road and an extension of these rights across the Higgins West Parcel to Parcels A and B. II. Grant of Easement ¶ 17 Defendants contend on appeal that the district court reversibly erred when it found that Smith proved by a preponderance of the evidence all elements of his claim for an easement implied by prior use. Although Defendants argue the issue in several different ways, they assert in essence that the district court failed to find a specific prior use of the requested easement, ignored the abandonment of any prior use, and relied on “speculative evidence” to reach incorrect factual conclusions. We are not persuaded. A. Standard of Review ¶ 18 When a court enters judgment following a bench trial, that judgment presents a mixed question of law and fact. State Farm Mut. Auto. Ins. Co. v. Johnson, 2017 CO 68, ¶ 12. While we review the court’s application of the governing legal standards de novo, we review its factual findings for clear error. Id.; May v. Petersen, 2020 COA 75, ¶ 10. We will disturb the court’s factual findings only if 
12 there is no evidence in the record supporting them. See M.D.C./Wood, Inc. v. Mortimer, 866 P.2d 1380, 1382-83 (Colo. 1994). ¶ 19 “It is the responsibility of the trial court as the trier of fact to determine the credibility of the witnesses and the sufficiency, probative effect, and weight of the evidence.” In re Marriage of Hatton, 160 P.3d 326, 330 (Colo. App. 2007). It is not our role to reweigh the evidence. Gagne v. Gagne, 2019 COA 42, ¶ 51. We draw all reasonable inferences from the evidence in favor of the prevailing party, including inferences and conclusions drawn from conflicting evidence. See Weisiger v. Harbour, 62 P.3d 1069, 1071 (Colo. App. 2002). B. Applicable Law ¶ 20 An easement implied by prior use arises “when a property owner has used one part of a single piece of property for the benefit of another part of the property.” Lobato v. Taylor, 71 P.3d 938, 972 (Colo. 2002) (Kourlis, J., dissenting) (citing Thompson on Real Property § 60.03(b)(4) (David A. Thompson ed., 1994)). To establish an implied easement by prior use, a party must demonstrate that (1) the servient and dominant estates were once under common 
13 ownership; (2) the right alleged was exercised prior to the severance of the estate; (3) the use of the right was not merely temporary; (4) the continuation of this use was reasonably necessary to the enjoyment of the parcel; and (5) a contrary intention is neither expressed nor implied. Id. at 951 (majority opinion). ¶ 21 Easements may be terminated by abandonment, but two elements must be present for that to occur: (1) intention on the part of the owner of the easement to abandon it and (2) an overt act displaying such intention. 2 Cyndi Stovall, Colorado Practice Series: Methods of Practice § 65:7(2), Westlaw (Stephen A. Hess ed., 7th ed. database updated May 2024). “Non-use, however long continued, will not constitute abandonment without the requisite intention to abandon.” Id. And “[t]he fact that the owner of the easement has failed to use the easement for any period of time is of no consequence . . . because the owner of the easement has the privilege of use or non-use at its pleasure.” Id. § 65:7(8.1). Whether there was an intent to abandon an easement is a question of fact that the party arguing for abandonment has the burden of showing “by clear, unequivocal and decisive evidence.” Rivera v. 
14 Queree, 358 P.2d 40, 42 (Colo. 1960) (quoting Hoff v. Girdler Corp., 88 P.2d 100, 102 (Colo. 1939)). C. Analysis ¶ 22 During a four-day bench trial, the district court considered evidence concerning the relevant properties’ chains of title as well as their appearance and use dating back more than a century. ¶ 23 The district court’s order took into account “maps and aerial photos [that] show[ed] a barn on and a road up to and over Smith Parcel A beginning in 1901 . . . and continuing through at least 1969 . . . , which [wa]s after severance of Smith Parcels A and B” that were admitted into evidence. According to the district court, “[t]he road [wa]s clear in the sequence of aerial photos, even as the neighborhood change[d] around it,” and it “extend[ed] from what is now the turn-around on the Higgins West property and continue[d] [n]orth along the eastern boundary line of the Higgins West property and onto Smith Parcel A, where a barn or structure [wa]s visible.” Moreover, the court found, the maps and aerial photographs demonstrated that the dirt road was the only means of accessing the portions of Pearl Brown’s property that would later become the landlocked Smith Parcels A and B, and Defendants presented no 
15 evidence of recorded legal access to those parcels after their severance. ¶ 24 Testimony from both parties also discussed “the existence of the foundation of what appears to be an outbuilding which still exists on Smith Parcel A,” including “historical retaining walls.” And testimony from James Higgins and Defendants’ expert witness revealed that the existing private road and its stone walls were constructed in approximately 1880 — considerably earlier than the property transfers relevant to this dispute. ¶ 25 Testimony, statements, and a deed admitted at trial also demonstrated to the district court that, years and even decades after Smith Parcel A was initially landlocked, multiple previous owners of the Smith Parcels believed they had a right to an easement over the private road to access their property. And, the district court noted, “there is no evidence in the record of any contrary intention by any of the previous owners of the relevant properties.” ¶ 26 In its written order, the district court explained that, taken together, this evidence satisfied all elements of Smith’s claim for an easement implied by prior use. First, neither party disputed that 
16 the relevant properties were once under common ownership. Therefore, the district court concluded, “[t]he evidence . . . show[ed] that not only the [e]xtension, but also the [e]xisting [e]asement, ha[d] been used prior to, during, and after severance of Smith Parcels A and B, for the benefit of all owners of the properties at issue,” thus satisfying the second and third elements of Smith’s claim. Second, because of the necessity of using the dirt road to access the Smith Parcels, the district court found that Smith satisfied the fourth element of his claim — that the continued use of the dirt road was reasonably necessary to enjoy the parcels of land. Lastly, the district court explained that the apparent belief by multiple owners of the Smith Parcels that they could access their property over the dirt road, along with the lack of record evidence indicating any expressed or implied contrary intention, satisfied the fifth element of Smith’s claim. ¶ 27 The district court applied the correct legal standard for determining whether Smith established the existence of an easement implied by prior use. And because the court’s findings have record support, we will not disturb them. See Mortimer, 866 P.2d at 1382-83. To the extent that Defendants ask us to review 
17 the district court’s factual conclusions purportedly based on “speculative evidence,” we may not do so. It is not our role to reweigh the evidence; to the contrary, we must defer to the fact finder’s decisions on witness credibility and evidence, including inferences and conclusions drawn from conflicting evidence. See Gagne, ¶ 51; Weisiger, 62 P.3d at 1071. ¶ 28 We are also unpersuaded by Defendants’ contention that the district court reversibly erred by failing to conduct an analysis of the specific prior use for the easement before the Smith Parcels were severed. In its order, the district court specifically found that [d]espite Homeowner Defendants’ contention that it cannot be concluded what the precise use of the road was at all relevant times, the cumulative effect of all of this evidence is that a road has long been in existence from Chelton Road all the way to the outbuilding on Smith Parcel A, and that it was used for purposes of accessing all of the properties along it, including Smith Parcel A and the improvement(s) thereon.
4 ¶ 29 Defendants’ remaining contention with respect to this easement — that any prior use was abandoned — is similarly 4 Given these findings, it is immaterial whether severance occurred in 1948, as Defendants contend, or in 1952, as the court found, because the road existed prior to both of those dates. 
18 unavailing. Throughout their briefs, Defendants refer to the easement as “abandoned,” yet they make no attempt to demonstrate the two necessary elements for termination of an easement by abandonment: (1) intention on the part of the owner of the easement to abandon it and (2) an overt act displaying such intention. See Stovall, § 65:7(2). Defendants repeatedly emphasize their belief that many years have elapsed since this road was last used for the benefit of the Smith Parcels, but non-use alone, no matter how long, does not constitute abandonment of an easement. See id. The district court correctly rejected Defendants’ argument after they failed to prove “by clear, unequivocal and decisive evidence,” Rivera, 358 P.2d at 42, that this easement was abandoned. Defendants’ assertion on appeal that “the only logical conclusion” from the evidence at trial is that any prior use “was created for the benefit of the Clint/Kinder parcel” is nothing more than an attempt to have this court reweigh the evidence, which we may not do. III. Scope and Location of Easement ¶ 30 Defendants also challenge specific details of the easement granted by the district court. They maintain that the district court 
19 was not permitted to include utility rights in Smith’s easement or to place the easement over the Higgins West Parcel and alter some of its dimensions. We reject these arguments. A. Standard of Review and Applicable Law ¶ 31 The power to fashion equitable remedies lies within the discretion of the trial court. Beren v. Beren, 2015 CO 29, ¶ 12. Absent an abuse of that discretion, we will not disturb such rulings. Id. A trial court abuses its discretion if its ruling is manifestly arbitrary, unreasonable, or unfair. Schneider v. Drake, 44 P.3d 256, 261 (Colo. App. 2001). We defer to a trial court’s findings of fact so long as they are supported by the record. See Nat’l Propane Corp. v. Miller, 18 P.3d 782, 787 (Colo. App. 2000). ¶ 32 A trial court may generally exercise its discretion to fashion equitable remedies to resolve property disputes. See Strole v. Guymon, 37 P.3d 529, 533 (Colo. App. 2001); see also Schneider, 44 P.3d at 262 (court did not abuse its discretion in devising equitable remedy that addressed concerns of both parties in property dispute). And “[i]n fashioning a remedy between the owners of the dominant and servient estates, effecting a compromise between the 
20 parties’ positions is often the best resolution of an easement question.” Strole, 37 P.3d at 533. ¶ 33 The holder of an easement is entitled to use the easement in a manner reasonably necessary for its continued enjoyment. Restatement (Third) of Property: Servitudes § 4.10 (Am. L. Inst. 2000). The scope of easements implied by prior use, like easements by necessity, is based in part on a presumption “that the grantor has conveyed or retained whatever is necessary to provide for the beneficial use of both properties.” Amada Fam. Ltd. P’ship v. Pomeroy, 2021 COA 73, ¶ 58. “The manner, frequency, and intensity of the use may change over time to take advantage of developments in technology and to accommodate normal development of the dominant estate or enterprise benefited by the servitude.” Restatement (Third) of Property: Servitudes § 4.10; see also Wagner v. Fairlamb, 379 P.2d 165, 169 (Colo. 1963) (An easement’s “scope and type of . . . use, present and future, varies with the necessity.”). ¶ 34 The scope of an easement created by implication is dictated by the purpose for which the property was conveyed or retained, including reasonably expected uses based on the parcel’s normal 
21 development. See Thompson v. Whinnery, 895 P.2d 537, 541 & n.8 (Colo. 1995) (The scope of an easement created by implication “is to be inferred from the circumstances which exist at the time of the conveyance” including “the use which is being made of the dominant tenement at that time”; however, this is to be limited not by the exact use required by the dominant tenement at that time but “measured rather by such uses as the parties might reasonably have expected from future uses of the dominant tenement,” including “such uses as might reasonably be required by a normal development of the dominant tenement.” (quoting Restatement (First) of Property § 484 (Am. L. Inst. 1944))). And “foreseeable residential use reasonably includes utilities.” Amada, ¶ 60. Moreover, “[w]hen the dominant tenement is subdivided, certain existing easements appurtenant, such as for access and utilities, may be expanded in scope so as to continue to serve the premises, even though the use thereof is more frequent or intense than originally contemplated.” Stovall, § 65:6(2). ¶ 35 The location of an implied easement “will frequently be the same as an existing way or, if none exists, then along a reasonable route designated by the servient owner.” Id. But a court exercising 
22 its equitable powers may in its discretion alter the location of an easement. Id.; see also Brown v. Bradbury, 135 P.2d 1013, 1013 (Colo. 1943) (trial court did not abuse its discretion when moving easement for ditch away from house because power of courts of equity to do so “is not open to question”). B. Utilities ¶ 36 Defendants contend that the district court erred when it granted Smith’s request for an easement that included utility rights. They argue that Pearl Brown never possessed a utility easement over Defendants’ property and that she therefore did not have a right to reserve a utility easement for subsequent owners of the Smith Parcels. However, the availability of utility rights as part of Smith’s easement stems from the district court’s equitable powers and the evolving nature of the easement over time, not the specifics of Pearl Brown’s easement in the early 1950s. ¶ 37 The Smith Parcels — both zoned for residential use, one of which the district court found historically contained “a barn or structure” — were conveyed to individuals at a time when the land once under common ownership was being developed for residential use. Supplying utilities to the Smith Parcels was therefore a 
23 reasonably anticipated use of the easement that the district court found was implied by prior use, as normal development of the Smith Parcels would foreseeably include residential development. Because the district court had the authority to fashion equitable remedies to resolve this property dispute, see Strole, 37 P.3d at 533, and because awarding utility rights to accommodate the changing needs of the Smith Parcels over time was an equitable remedy with a sound basis in law, we cannot say that the district court abused its discretion in awarding these rights. C. Physical Placement ¶ 38 Defendants also contend that the district court erred by altering some of the easement’s dimensions and by placing the extension of the easement over the Higgins West Parcel rather than the Higgins East Parcel. As with the awarded utility rights, however, the district court’s equitable powers also permit its actions here. ¶ 39 In its written order, the district court noted that its decision to extend the easement across the Higgins West Parcel was informed by James Higgins’s testimony about what was practical and preferable for his property. Specifically, Higgins “agreed in his 
24 testimony that given the lack of space between his house on Higgins East and the property line, as well as the stone improvements, an access road cannot be placed on Higgins East.” As occurred here, implied easements are frequently located “along a reasonable route designated by the servient owner.” Stovall, § 65:6(2). More importantly, however, the district court found that the easement it granted was implied by prior use of a road that “extend[ed] from what is now the turn-around on the Higgins West property and continue[d] [n]orth along the eastern boundary line of the Higgins West property and onto Smith Parcel A” — exactly where the district court positioned the extension of the easement. ¶ 40 And, with respect to the district court’s decision to alter some of the easement’s dimensions at various points, the district court was well within its discretion to exercise its equitable powers in this manner. See Brown, 135 P.2d at 1013. Accordingly, we find no abuse of the district court’s discretion. IV. Request for Appellate Costs ¶ 41 Smith requests that this court “award [him] his costs, pursuant to C.A.R. 39.” C.A.R. 39(a)(2) provides that “if a judgment is affirmed, costs are taxed against the appellant.” Because we 
25 affirm, we remand to the district court for a determination of appellate costs. V. Disposition ¶ 42 We affirm the district court’s judgment and remand the case with directions. JUDGE FOX and JUDGE SULLIVAN concur.